[Crim. No. 2272. In Bank.—February 6, 1920.]

## THE PEOPLE, Respondent, v. S. RODRIGUEZ, Appellant.

[1] CRIMINAL LAW—MURDER—ADMISSION OF KILLING—JUSTIFICATION—BURDEN OF PROOF.—In a prosecution for murder, where the killing is clearly shown and admitted, the burden is upon the defendant to explain how it happened that he took a human life and to show any circumstances of mitigation, excuse, or justification for his act that might exist, and unless he meets this burden to the extent of raising a reasonable doubt as to his being guilty of murder as distinguished from manslaughter or justifiable homicide, a verdict of murder in the second degree is justified from the fact alone that he had taken human life.

[2] ID.—MURDER IN SECOND DEGREE—VERDICT SUPPORTED BY EVIDENCE.—In a prosecution for murder, where the killing by the defendant was clearly shown and was admitted, but there were no witnesses

1. Burden of proof in prosecution for homicide with respect to issue of self-defense, note, Ann. Cas. 1912C, 47.

of the occurrence so that the immediate circumstances and the acts of the deceased and the defendant leading up to and culminating in the tragedy did not appear in the case for the people, a verdict of murder in the second degree cannot be said to be contrary to the evidence, although the defendant ' testified that he acted in self-defense, where the circumstances were such that it cannot be said the jury acted unreasonably in rejecting the defendant's explanation of the occurrence.

APPEAL from a judgment of the Superior Court of San Diego County. T. L. Lewis, Judge. Affirmed.

The facts are stated in the opinion of the court.

Jas. G. Pfanstiel and E. F. Du Fresne for Appellant.

U. S. Webb, Attorney-General, Joseph L. Lewinsohn, Deputy Attorney-General, and Jerry H. Powell for Respondent.

OLNEY, J.—The defendant was convicted of murder in the second degree and appeals upon the sole ground that the jury's verdict of guilty was contrary to the evidence.

The killing by the defendant was clearly shown and was admitted. There were no witnesses of the occurrence, so that the immediate circumstances, the acts of the decedent and the defendant leading up to and culminating in the tragedy, did not appear in the case for the people, and, in particular, no circumstances of mitigation, excuse, or justification appeared. So far as the case for the people is concerned, it is one where the killing by the defendant is shown without explanation as to just how or why it occurred. Such a' case is of itself sufficient to warrant a verdict of guilty of murder. [1] The killing by the defendant being shown, the burden was upon him to explain how it happened that he took a human life and to show any circumstances of mitigation, excuse, or justification for his act that might exist. Unless he met this burden to the extent of raising a reasonable doubt as to his being guilty of murder as distinguished from manslaughter or justifiable homicide, the verdict was justified from the fact alone that he had taken human life. Section 1105 of the Penal Code reads: "Upon a trial for murder, the commission of the homicide by the defendant being proved, the burden of proving circum-

stances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable.''

This burden the defendant endeavored to meet by himself taking the stand and testifying as to how the killing had occurred. His account, if believed by the jury, would have required of them a verdict of no more than manslaughter at the most and would have justified a verdict of not guilty. But the truth or falsity of the account was for the jury, and if it was not believed by them, their duty was to return a verdict of guilty of murder, as they did. Their verdict was, in effect, a rejection of the defendant's explanation, and their action in this respect can be overturned on appeal only in case the evidence is such that the appellate court can say that the truthfulness of the explanation so strongly appears as of necessity to raise a reasonable doubt as to the defendant's guilt in the mind of any reasonable man.

The defendant's counsel contend that he was convicted upon the unsupported inferences and mere suspicions of the jury. It is plain, however, that this is not true. It appearing that the defendant did the killing, there is no want of evidence to support the verdict. The real question is not one as to a want of evidence, but one as to the verdict being against the evidence. With the question in the case so defined there can be little doubt as to its answer.

The decedent was a young married woman, named Mrs. Garcia, living in San Diego. She kept house for her husband and the defendant had lived with her and her husband for some time as a boarder. He had been quite ill, but at the time of the homicide had been up and about for some days, was at least able to do light work, and had been looking for work. At the time of the trial he weighed 140 pounds, but according to his statement was considerably heavier than at the time of the homicide. Mrs. Garcia weighed about 120 pounds and was in good health.

The homicide occurred about 5 o'clock in the evening. Mrs. Garcia's husband had not yet returned from his work and she and the defendant were alone in the house together. There was evidence of a friend of Mrs. Garcia, a woman, that shortly before the defendant had made a remark to

Mrs. Garcia of a complimentary and somewhat significant character, which the latter had resented. The homicide was committed by shooting, the weapon being the defendant's revolver. Four shots were fired. There is a slight conflict as to the order of the shots, but it is fairly certain that there was one shot followed after a brief interval by three more close together. Mrs. Garcia was struck three times, once in the forearm, once in the abdomen, and once in the breast. The first would not have produced death. Either of the other two was alone sufficient. The shots were heard, people near rushed to the house and there found Mrs. Garcia on the floor already dead. She was fully dressed, as if she had been just on the point of going out. In the meantime, before any outsider reached the house, the defendant had blown out the only light in it and left, going rapidly toward the center of town. He was followed, pointed out to the police, and arrested. When asked about the killing he replied, ''I am crazy.'' On being arrested it was found that he too had been shot through the breast.

The defendant's explanation of the affair is: ''After 5 o'clock I went in and Mrs. Garcia, deceased, was in her room; . . . and immediately she came out dressed as though she was going downtown; . . . and she went to the dresser and began combing her hair; . . . and I asked her where she was going, because it was so late. She answered and said, 'I am going downtown.' I told her, 'You better wait until husband come back, it is so late; you better wait until he comes back.' She answered, 'That is none of your business; I can go wherever I please.' I repeated it several times, and she answered at the same time while she was combing her hair. Suddenly she turned around and walks into my room and comes out and fires through my chest. I felt I was wounded and I scuffled and grabbed her, and after a little scuffle I took it away from her. I then took the pistol away from her; she tried to pull away; when I took the pistol away then I put the pistol against her; I was very weak; I was afraid she would take the pistol away from me and kill me, invalid like I was. . . . I grabbed her and grabbed hold of the pistol and made an effort to take it away from her. . . . She was holding it with her hands. . . . It was loaded with six shots—shells. . . . For a minute, or a little over, I was trying to get the pistol away from

her, and all the time she was try to get the pistol away from me. . . . And when I did take it away from her she jumped on me again; that is when I shot, because I was so weak I was afraid she would take it away from me. . . . She was very close to me; I should judge not over three or four feet, that I seen her when she was lunging towards me, that I shot. . . . It was a minute or a little more after she shot me that I shot her; I was wrestling with her during that time. I don't remember how many shots I fired. . . . I remember when I left there I had my left hand on the wound and I had the pistol in my right hand, and walking along I felt as though I needed some more weight on my wound, and I throwed my pistol down to put my other hand on the wound.''

The statement of the defendant that he was first shot by Mrs. Garcia is corroborated to some extent by the order of the shots, first, one, and then, after an appreciable interval, three others in close succession, and by the fact that no powder burns were observed upon his body or clothes when he was examined at the hospital immediately after being arrested. It is difficult to see how his wound could be self-inflicted without powder burns.

But assuming that the defendant was first shot by Mrs. Garcia, we still think it plain that it cannot be said that the jury was unreasonable in rejecting the defendant's explanation. The essential point of the explanation was that the defendant had acted in self-defense. But whether he actually did or not would depend very largely on whether he or Mrs, Garcia was the original aggressor. His statement is that it was Mrs. Garcia. But on this point his explanation is difficult of belief, to say the least. So far as the explanation goes, the only reason for Mrs. Garcia shooting the defendant was his remark to her, repeated several times, that it was late and she had better wait until her husband came home. It is well-nigh incredible that such a remark, no matter how often repeated, should provoke a woman to the point of endeavoring to kill. It is fairly certain that something must have occurred other than that to which the defendant testified, which caused Mrs. Garcia to shoot. [2] This being so, the jury was justified in rejecting the explanation given by the defendant. There are also certain other circumstances which in some degree corroborate this view.

The result is that there are no circumstances of mitigation, excuse, or justification which the jury was obliged in reason to accept, and their verdict of murder is not contrary to the evidence as a whole.

Defendant's counsel refer to and rely upon *People* v. *Elmore,* 167 Cal. 205, [138 Pac. 989], as a case parallel to the present. But the difference is marked. In both cases the defendant had admittedly committed the homicide. But in the Elmore case there were eye-witnesses, and there was no room for doubt as to just how the homicide occurred and as to the incidents which led up to it. The defendant, after endeavoring to avoid a fight, had been set upon in a saloon by a half-intoxicated man, much larger and more powerful, and in the fray killed his aggressor. In the present case the incidents which led up to the homicide are known only to the defendant, and the explanation which he offers is that a woman made a well-nigh unprovoked and wholly inexplicable attempt to kill him, and that in the fray he killed her. In the one case the jury was not justified in refusing to accept the evidence as to how the homicide had occurred and such evidence showed clearly a case of manslaughter only at the worst. In the other the jury could reasonably reject the explanation in its essential particulars.

Judgment affirmed.

Shaw, J., Wilbur, J., Lennon, J., Lawlor, J., and Angellotti, C. J., concurred.