[Crim. No. 1498.   Second Appellate District, Division Two.—August 26, 1927.]

THE PEOPLE, Respondent, v. EDWARD FORD, Appellant.

Fred Noon for Appellant.

U. S. Webb, Attorney-General, and Frank Richards, Deputy Attorney-General, for Respondent.

CRAIG, J.—The appellant was charged by information with the crime of murder. He was tried and by the jury's verdict convicted of murder in the second degree. The trial court denied his motion for new trial, and this appeal is from that order, and from the judgment and sentence based upon such verdict. A consideration of two of the grounds urged for reversal requires a statement of the facts proven and of some of the evidence introduced.

About the hour of 11:15 P. M. of September 17, 1926, appellant was seen by a police officer staggering on one of the main streets of La Jolla. At that time appellant appeared unable to talk, but said he "was shot"; he was wet and quivering; the officer took him to the hospital, where the only thing said by appellant was "girl shot too"; he had two bullet wounds in his forehead and one on the top of his head; pieces of a flat bullet were extracted from under the scalp on the top of his head; the bullet was

32-caliber; there were powder burns on his forehead. On the following morning a woman's body was found in one of the summer houses at La Jolla park, near the beach; the deceased was one Anna Carleton; there was a bullet wound from left to right through the bridge of her nose, entering at the inner angle of the left eye, and a furrow was cut in the upper lid of the right eye; there was another bullet wound at the outer angle of the left side of her nose, near the alar, going straight through the head, into the base of the brain, which caused death; there were no powder burns on her face; however, there was a powder-stained bullet wound through the second joint of the ring finger of the left hand and powder stains on the inside of the little finger and the middle finger of the same hand. Tracks which the shoes worn by appellant fitted led away from the summer house to the driveway, and from the driveway to the beach, for about fifty feet; on the rocks at the beach about fifty feet from the summer house a 32-caliber revolver was found, which contained five empty shells, and its appearance indicated that it had been fired within twelve hours previously to the time when found. Proof was also introduced as to the position of the body of the deceased when discovered, as well as of various articles of the summer house, at that time.

It is contended that the *corpus delicti* was not established. ■ In a trial, where the charge is murder, the *corpus delicti* consists of proof of the facts forming the basis of the offense, and the existence of a criminal agency as the cause of it. ■ In the present case the *corpus delicti* consisted of proof of the death of Anna Carleton and that it was produced by criminal means. The autopsy surgeon testified that it was his opinion that although it would have been possible for the deceased to have inflicted the wounds upon her face it would have been improbable that she did so; he said that the wound through the nose from one side to the other was a very serious one and would have stunned her; that the other bullet, which pierced the brain, produced death. Consequently, it would follow that whichever one was inflicted first would have prevented the other from being self-inflicted. The testimony of W. H. Churchman, a police sergeant, was of similar import. He pointed out that it would have been very difficult for the deceased to have

inflicted the wound through the nose from left to right. In that connection he called attention to the fact that she could not have held the revolver in her left hand, for that hand was wounded. To have inflicted this wound in the nose by shooting the revolver with the right hand would have been next to impossible. That this is true is obvious. To realize how extremely unlikely it is that the deceased inflicted this wound, it is only necessary to visualize the position which her right hand would have been required to have held; she must have grasped the gun at the full length of her arm from her face, otherwise there would have been powder burns upon it, according to Churchman. There were no such burns. Then, with the right arm fully extended toward the left, she would have been compelled to turn the revolver so as to point it back toward her nose, for it will be remembered that the bullet entered on the left side, and holding the weapon thus, she would have pulled the trigger. Although at one point in his testimony Churchman stated that this would have been possible, later in reply to another question he said: "And I think if I was just to be down straight with myself, I don't think it is possible; if I would just get at my own honest opinion about it, straight and straight, I do not think it is really possible to fix it that way." If the members of the jury accepted the statements of these witneses as true, or if they merely reasoned the matter out for themselves from the facts proved, they were amply justified in concluding that the deceased did not commit suicide, and that she died from a criminal agency. That death occurred is not disputed, and this testimony alone, if believed by the jury, would have justified them in concluding that a criminal agency was the cause of death. A number of other circumstances indicate that the deceased did not commit suicide, but it is not necessary to delineate them here. The essential elements necessary to complete proof of the *corpus delicti* were undoubtedly proven by evidence which justified the jury's conclusion in that behalf.

Appellant contends that the court erred in giving a certain instruction, it being argued that by the use therein of the word "confession" the jury were misled into believing that a statement by the defendant which was introduced

in evidence was a confession. The instruction concerning which complaint is made is as follows:

"Proof of the *corpus delicti* means proof of the body of the crime; that is, first, certain facts forming its basis; and second, existence of criminal agency or means as the cause of them. And it may be proved by circumstances shown in evidence, or by inferences drawn from the facts proven.

"It is not necessary that the *corpus delicti* should be proved beyond a reasonable doubt before proof may be made of an extrajudicial confession. *Prima facie* evidence of the *corpus delicti* is sufficient; and it is for the court to say whether there is sufficient evidence of the *corpus delicti* to go to the jury, precisely as in the case of any other material fact.

"The evidence of the *corpus delicti* need not be of conclusive character, and need not necessarily connect the party informed against with the commission of the crime, in order to justify the admission and consideration of the confession of such parties so charged with the crime."

It is true appellant made no confession. Some of the statements made by him, however, were of a character susceptible of a construction such as to render them admissions of a damaging character. This was not a case where it was proper to give the instruction in question; yet, in view of all of the instructions and the evidence before the jury, we cannot believe that its members were led to believe that the defendant had confessed to guilt of the crime with which he was charged or of which he was convicted. In this connection the court instructed the jury that he had not expressed or intended to express or to intimate any opinion as to what facts had been established or what inferences should be drawn from the evidence adduced, and that if any expression of his seemed to indicate an opinion relating to any of these matters, such expression must be entirely disregarded.

Another point mentioned, but not strongly urged, by appellant, is that it was error for the trial court to instruct the jury that a verdict of murder in the second degree might be returned. There is no merit to this claim. The proof established a case where such an instruction was peculiarly apt—in fact, necessary. The evidence against the appellant was almost entirely circumstantial; there was no

definite proof of motive, nor as to what conduct or conversation immediately preceded the killing. Although the jury believed that the appellant slew the deceased, there was no evidence of that deliberation preceding the act which is necessary to constitute murder of the first degree. On the other hand, there was also an absence of proof of provocation and sudden passion which would bring the offense within the definition of manslaughter, and without which the only lawful verdict must have been one finding the defendant guilty of murder. This is so since upon the commission of homicide by a defendant having been established, the crime is murder unless there is evidence produced either by the prosecution or the defense affirmatively showing circumstances of mitigation which would bring the murder within the definition of manslaughter. Therefore the jury legally and logically returned a verdict of murder in the second degree, for the circumstances of the killing were certainly such as to show an abandoned and malignant heart.

The judgment is affirmed.

Works, P. J., and Thompson, J., concurred.