[Crim. No. 3298.   Second Appellate District, Division One.—March 1, 1940.]

THE PEOPLE, Respondent, v. MAX GOLDSTEIN, Appellant.

Gladys Towles Root and Eugene V. McPherson for Appellant.

Earl Warren, Attorney-General, and Bayard Rhone, Deputy Attorney-General, for Respondent.

WHITE, J.—In an information filed by the district attorney of Los Angeles County defendant was charged with the murder of his wife, Dora Dean Goldstein, on June 18, 1939, to which charge he entered a plea of not guilty. After a trial before the court sitting without a jury, defendant was found guilty of murder of the first degree and sentenced to life imprisonment. From the judgment of conviction and from the order denying his motion for a new trial defendant appeals. The sole contention on appeal is that the circumstances surrounding the killing show that the crime was manslaughter or at the most murder of the second degree.

Summarized, the evidence upon which the court based its decision is as follows: The deceased, Mrs. Goldstein, came to the home of a Mrs. Gronoff on June 18, 1939, at about 11 o'clock in the morning, where she stayed all day. Defendant came to the house several times during the day and had conversations with his wife in which he asked her to come home with him, to which requests she replied that she was through with him, that she was waiting for her son to pick up her belongings and that she was leaving him. In the evening defendant returned again to the house, saying to his wife, "Honey, let's make up and forget it. Let's go to a show and have dinner," to which the wife again replied that she was through; and "that was the last time she would ever go with him". About 8:15 or 8:30 of the same evening, according to the witness Mrs. Gronoff, defendant and his wife left the house together, and "a very short time" after they departed, "about five minutes or something like that", the witness heard two shots, and coming out on the front porch found deceased sitting on the steps and the defendant gone.

On cross-examination the witness Mrs. Gronoff testified that defendant had said to his wife, "I can't live without you. Please, come on, let's go to the show." That the wife replied in substance that "she was through with him because he would not let her keep company with her men

friends". Defendant was crying and begging and on his knees. That in this conversation he also told her he was some twenty years older than she, and since their marriage they "had gone through every dime they had".

One witness testified that on June 15, 1939, and on other occasions she had heard the defendant say to his wife, "Honey, if anything you do I don't like I will shoot you. I hate to waste bullets because they cost money;" that he said he "didn't care what happened to him; that he would put his arms around her and call her endearing names". Another witness testified that on several occasions she heard defendant tell his wife that if she ever left him he would kill her; that whenever he said that he always started out the statement by calling her darling or some endearing name; that he would tell her he was very much in love with her and life meant nothing without her. A police officer testified that he found the defendant at an oil station near the scene of the shooting shortly after 8:30 P. M.; that the defendant handed him a revolver and said that he had just shot his wife; that he loved her very dearly and had been arguing with her for a day and a half; that she threatened to leave him and he couldn't stand to see her go; that he had spent all of his money since their marriage. It further appeared from the evidence that deceased was about 42 years of age and the defendant 60. The defendant took the stand, but testified only as to his age.

Since the case of *People* v. *Iams,* 57 Cal. 115, instructions to juries in murder cases have been approved which advised the jurors that: "The difference between murder of the first degree and murder of the second degree is: that in murder of the first degree the killing must be deliberate and premeditated, while in murder of the second degree the killing is not deliberate and premeditated. In the one case there is a deliberate, premeditated, preconceived design, though it may have been formed in the mind immediately before the mortal wound was given, to take life. In the other case there is no deliberate, premeditated, preconceived design to kill. In both, however, the killing must have been unlawful and accomplished with malice."

In a well-reasoned and exceptionally well-considered opinion in the case of *People* v. *Wells,* 10 Cal. (2d) 610, 619 [76 Pac. (2d) 493]; the Supreme Court, speaking through Mr.

Justice Houser, says: "In order that a conclusion that the offense constituted a murder of the second degree might be sustainable, it should appear with reasonable certainty that immediately preceding the execution of his fatal act the killer had not formed a deliberate intent to take the life of the person whom he thereafter killed, or that such act was not the result of 'pre-existing reflection' or 'deliberate premeditation'."

Under the provisions of section 1105 of the Penal Code, when the commission of the homicide by the defendant has been proved, "the burden of proving circumstances of mitigation, or that justify or excuse it", rests upon the defendant. This, of course, does not mean that a defendant charged with murder is obliged to establish his defense or "facts in ·mitigation" by a preponderance of the evidence on that issue, but it does mean that he must elicit, either in the testimony offered by the prosecution or that submitted in his own behalf, such evidence as will create in the minds of the jury, or the trial judge where a jury is waived, a reasonable doubt of his guilt of the offense charged or of his guilt of the higher degree of such offense. (*People* v. *Wells, supra.*) As was said in *People* v. *Rodriguez,* 182 Cal. 197 [187 Pac. 423]: "the killing by the defendant being shown, the burden was upon him to explain how it happened that he took a human life and to show any circumstances of mitigation, excuse, or justification for his act that might exist. Unless he met this burden to the extent of raising a reasonable doubt as to his being guilty of murder as distinguished from manslaughter or justifiable homicide, the verdict was justified from the fact alone that he had taken human life".

In the instant case, where a jury was waived, the trial judge was clothed with the power to give such weight as he deemed proper to all the circumstances surrounding the commission of the homicide in determining to what extent if at all they operate as mitigating circumstances in the killing. (6 Cal. Jur. Ten-Year Supp., p. 325; *People* v. *Gebbia,* 138 Cal. App. 94 [31 Pac. (2d) 822].) In determining that the evidence established the fact that the killing was the "willful, deliberate and premeditated" act of the defendant, it was within the province of the trial judge to take into consideration the quarrel between defendant and his wife on

the day of the homicide when deceased told defendant she was through with him; also the fact that when defendant called upon the deceased on the evening of the tragedy he had armed himself with a loaded revolver; and as well the previously oft-repeated threats to kill her if she left him and his statement, ''Honey, if anything you do I don't like I will shoot you. I hate to waste bullets because they cost money;'' also defendant's statement to the arresting officer that he had been arguing with deceased over the period of a day or a day and a half and that she threatened to leave him and he ''couldn't stand to see her go''.

In connection with what we have just said, the Supreme Court, in the case of *People* v. *Mahatch,* 148 Cal. 200, 203, says [82 Pac. 779] :

''The jury, having found that the only extenuating circumstance which he interposed had no existence in fact, and no claim of any circumstances of mitigation, justification, or excuse for the killing being advanced, had a right to infer, from the character of the weapon used, the nature of the wound inflicted, and the acts and conduct of the accused, the existence of a deliberate purpose on his part to kill the deceased when the fatal blow was struck, and, so inferring, were warranted in returning a verdict therefrom for murder in the first degree. This is the general, it may be said the universal, rule. If a different one prevailed, secret murders could rarely be punished by the infliction of the highest penalty. It is exclusively the province of a jury to determine the degree of crime when there is any evidence in the case which will support the determination. We are satisfied that in the case at bar there was sufficient evidence to warrant the jury, within the rule we have stated, in inferring the existence of a deliberate intent to kill. They so found and awarded the highest penalty, and their finding was approved by the trial judge on the motion for a new trial. This is conclusive upon the subject and upon us, as we can only disturb a finding when we can say, as matter of law, that there was no evidence to support it.''

See, also, *People* v. *Rico,* 180 Cal. 385 [181 Pac. 663] ; *People* v. *McNeer,* 14 Cal. App. (2d) 22, 25 [57 Pac. (2d) 1018] ; *People* v. *Shaver,* 7 Cal. (2d) 586 [61 Pac. (2d) 1170] ; *People* v. *Machuca,* 158 Cal. 62 [109 Pac. 886] ; 13 Cal. Jur., p. 595, and cases there cited.

Further, in connection with appellant's sole argument on appeal that the conviction should be reduced to that of murder of the second degree or manslaughter, it was pointed out in *People* v. *Wells, supra,* at page 626, that the authority conferred upon us in that regard by section 1181 of the Penal Code and exercised in the cases of *People* v. *Kelley,* 208 Cal. 387 [281 Pac. 609], and *People* v. *Howard,* 211 Cal. 322 [295 Pac. 333, 71 A. L. R. 1385], to modify a judgment of conviction of murder of the first degree by "reducing the crime to either murder of the second degree or to that of manslaughter", should be exercised by us "only where the evidence either clearly is insufficient to show anything other than that the defendant therein unlawfully killed a 'human being [presumptively] with malice aforethought', that is willfully, deliberately and premeditatively,— or, possibly, that with respect to whether such a condition in the mind of the defendant existed, as was indirectly suggested in the latter case," (*People* v. *Howard, supra*) "when this court entertains 'a doubt as to its (the evidence) showing murder of the first degree' ".

Under the facts of the case now before us this court does not have a reasonable "doubt" on the issues of the legal sufficiency of the evidence to sustain the decision of the trial judge finding the defendant guilty of murder of the first degree, and we cannot therefore disturb such decision.

For the foregoing reasons the judgment and the order appealed from are, and each is, affirmed.

York, P. J., and Doran, J., concurred.