[Crim. No. 18058. First Dist., Div. One. May 3, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT E. LEE, Defendant and Appellant.

708

## COUNSEL

Lawrence E. Kern, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, George Deukmejian, Attorneys General, Jack R. Winkler, Robert H. Philibosian, Chief Assistant Attorneys General, Daniel J. Kremer, Assistant Attorney General, Karl J. Phaler, Harley D. Mayfield and A. Wells Petersen, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ELKINGTON, J.—** Regrettably, we find ourselves compelled once again to reverse a judgment of conviction because of a trial court's erroneous extemporaneous comment and informal jury instructions, concerning the accused's critical defense.

Defendant Lee was charged with murder. He pleaded "not guilty" and "not guilty by reason of insanity." A theory of the prosecution was that the homicide was premeditated and deliberate. On trial of the issues posed by his not guilty plea, his only defense was that of *"diminished capacity."* He was found "guilty of first degree murder," and "sane," by a jury and he appeals from the judgment.

 As is now well known, under the *Wells-Gorshen* concept of diminished capacity even though a defendant be legally sane under the recently rejected M'Naghten test, or the now apposite American Law Institute criteria (see *People* v. *Drew,* 22 Cal.3d 333 [149 Cal.Rptr. 275, 583 P.2d 1318]), if he suffers from a mental illness that prevents him from acting with malice he may not be convicted of murder, and if so prevented from acting with premeditation or deliberation, he may not

under that theory be found guilty of murder, first degree. (*People* v. *Henderson,* 60 Cal.2d 482, 490-491 [35 Cal.Rptr. 77, 386 P.2d 667]; see *People* v. *Poddar,* 10 Cal.3d 750, 758 [111 Cal.Rptr. 910, 518 P.2d 342]; *People* v. *Sedeno,* 10 Cal.3d 703, 723 [112 Cal.Rptr. 1, 518 P.2d 913]; *People* v. *Anderson,* 63 Cal.2d 351, 365 [46 Cal.Rptr. 763, 406 P.2d 43].)

Under this rule, if a mental illness precluded Lee from entertaining malice at the time of his criminal act he could not be found guilty of, or punished for, murder; his offense would be no greater than manslaughter. And under such circumstances, assuming malice, were he unable to premeditate or deliberate, his crime under such a theory was not murder, first degree.

We recognize that the defense of diminished capacity, although it has many supporters, has often been criticized as illogical and disregardful of the public safety and welfare. Some point out that it confers a lesser punishment upon otherwise sane and legally responsible criminals because of mental aberrations predisposing them to violence, thus allowing them sooner to resume their antisocial depradations. On the other hand, they argue, one who is not mentally so predisposed, and is therefore a lesser threat to the community, will suffer the full measure of punishment for a similar crime. We decline to enter upon the debate. The concept of diminished capacity is ingrained in the law of this state, and we as a lesser reviewing court are bound to apply it. (See *Auto Equity Sales, Inc.* v. *Superior Court,* 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

We need not dwell upon the details of the offense which brought about Lee's conviction. It is sufficient to say that he assaulted a young college student and dragged her behind some bushes where in the perpetration of, or attempt to perpetrate, a sexual offense, he crushed her skull and killed her by repeated blows with a heavy pipe and rock. The crime was accompanied by nearly unbelievable viciousness and depravity.

The Attorney General's brief correctly describes the testimony of Lee's psychiatrist witness in this manner: "Dr. Satten testified during both phases of the trial. He found appellant to be paranoid and schizophrenic. . . . During the course of five interviews, the doctor found appellant to be withdrawn, autistic and preoccupied with his own thoughts, hallucinations or delusions. . . . Appellant's general delusional system focused on a belief people were trying to kill him. . . . Appellant thought the victim was part of an ambush set up for him so he had to do something to protect himself. . . . Dr. Satten felt appellant's failure to react to

warnings that police were coming indicated he was wrapped up in his own thoughts, and sex, particularly with persons of other races, was a preoccupation with him. . . . Based upon the doctor's contacts with appellant, Dr. Satten felt appellant could neither premeditate, deliberate or harbor malice." Dr. Satten's testimony concerning Lee's mental condition was corroborated by other evidence.

During the guilt phase of the trial, Lee's attorney on direct examination, when educing testimony of Dr. Satten tending to establish Lee's inability to entertain the necessary malice, and the premeditation and deliberation of one theory of the murder charge, and thus his diminished capacity, was interrupted by the trial court and, in the jury's presence, the following comments were made (the italics are ours):

"The Court: Yes. Doctor, let me—you understand, ladies and gentlemen of the jury, murder is the unlawful killing of a human being with malice aforethought. *So basically if A kills B, and that is all you know, that is murder of the second degree.* Now, that is one type, which is in line with [defense attorney] Mr. Beaupre's questions. If you find out that A premeditated and deliberated, you take the second degree murder and push it up to first degree. [¶] The word deliberate means formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action. [¶] The legal definition of the word premeditated means considered beforehand. *So that if you know that A kills B, in order to make it murder of the first degree, A must have arrived at or determined as a result of careful thought and weighing of considerations for and against, and then decided to kill.* If you don't find premeditation, then you cannot find first degree murder. And again the word deliberation; if you don't find deliberation you can't find murder of the first degree. You must consider it beforehand, and you must deliberate, which means formed as a result of careful thought and weighing of considerations for and against—which is not, unfortunately, the clinical definition. [¶] *So if all you know is that A kills B, that is second degree murder. To make it first degree, you must premeditate,* think about it beforehand, and deliberate, think about it, and after thinking about it, then do it. [¶] Now let me ask you the question Mr. Beaupre was trying to ask.

"Mr. Beaupre: Thank you, your Honor.

"The Court: As a result of this schizophrenia, in your opinion, could Mr. Lee deliberate and premeditate, as I have just defined it?

"The Witness: As you have defined it, I do not believe he could have deliberated or premeditated.

"The Court: Mr. Beaupre.

"Mr. Beaupre: Q. Do you believe he could harbor malice toward the victim? A. I do not believe so.

"The Court: Well, Doctor, do you know what malice is, as Mr. Beaupre uses it?

"Mr. Beaupre: Would you like to explain that?

"The Witness: Well, the instruction form tells what malice is not—

"The Court: *Let me tell you what malice is. There are two kinds of malice. Kind number one is called express malice. I'm going to kill you—bang. I point the gun, that's it. Then you have implied malice. Implied malice is the doing of an act involving a high degree of probability it will result in death.* I shoot the gun, done for a base, antisocial purpose, which means that I know what I am doing, and knowing the consequences of shooting the gun, I shoot it anyway; knowing it is for a base, antisocial purpose, I shoot anyway, knowing what is going to happen. So if I shoot him and kill him, it is for a base, antisocial purpose. *If I know that I have the gun and know that if I fire it it may result in death, and I go ahead and do it anyway, that is implied malice.* [¶] Okay, so that when you know that A kills B, if that is all you know, the implied malice is there, because you know that if somebody kills somebody in our society, you assume the base, antisocial purpose, which is the killing. The act is a base, antisocial purpose. But you need another thing for malice, you have to know what will happen when you kill, and knowing what will happen, which means somebody else will die, knowing that, you kill anyway. [¶] Now, let me read it to you just the way I am going to tell you later. Malice is implied when the killing results from an act involving a high degree of probability that it will result in death. *If you fire a gun at somebody, or take a pipe and hit somebody over the head with the pipe and keep on beating him,* there is a degree of probability it will result in death, which act is done for a base, antisocial purpose, which is to assault or kill the person, by which is meant an awareness of the duty by law not to commit the act, *and knowing the law says not to commit the act, you go ahead and do it anyway;* or, in other words, a wanton disregard for human life, by which is meant an awareness of a duty imposed by law not to commit such acts, followed by the commission of the forbidden act despite that awareness. *So if I*

*have the gun and I shoot it and it results in death, which is an antisocial purpose, but I know when I have that gun the law says you are not supposed to kill, I go ahead and rid the world of Dr. Satten anyway, then that is malice.* In other words, I point the gun at Dr. Satten and kill him, that is a base, antisocial purpose, to get rid of Dr. Satten. *If I know when I kill Dr. Satten it is against the law, that the law says I should not kill him, and I go ahead and kill him anyway, that is implied malice. Or express malice is, Satten, I don't like you, goodbye—bang.* Okay.

"Mr. Beaupre: Did you want to ask the question?

"The Court: Am I going to get your salary? [¶] Do you feel, in your opinion, as a result of his schizophrenia, he was unable to harbor implied malice?

"The Witness: I do believe so."

It will be remembered that the trial court was purportedly instructing the doctor, and thus the seated jury, on the elements of *malice,* and *premeditation* and *deliberation* in the context of Lee's diminished capacity defense in support of which the doctor had taken the witness stand. Yet the court avoided any mention of that defense, or its relation to the malice, and premeditation and deliberation, so discussed. ▮ And the above stated remarks of the court to the witness and jury were misleading and in greater part erroneous. They seriously prejudiced Lee in the presentation of his only defense, and they denied him that fair and impartial trial guaranteed by the state and federal Constitutions. (See *Powell* v. *Alabama,* 287 U.S. 45 [77 L.Ed. 158, 53 S.Ct. 55, 84 A.L.R. 527]; *People* v. *Lyons,* 47 Cal.2d 311, 319 [303 P.2d 329]; *People* v. *Sarazzawski,* 27 Cal.2d 7, 11 [161 P.2d 934]; *People* v. *Mahoney,* 201 Cal. 618, 627 [258 P. 607].)

▮ The trial court's unelaborated and repetitious statements, such as "if all you know is that A kills B, that is . . . murder," were undoubtedly founded upon the rule reiterated in *People* v. *Lines,* 13 Cal.3d 500, 506 [119 Cal.Rptr. 225, 531 P.2d 793]: " '[w]hen the killing is proved to have been committed by the defendant, and nothing further is shown, the presumption of law is that it was malicious and an act of murder; . . .' " But the trial court here neglected to state the balance of *People* v. *Lines'* rule that such " ' "malice is implied . . . in the absence of justifying or mitigating circumstances," ' " although there was copious evidence of such mitigating circumstances, i.e., diminished capacity, before the court and jury. (It is unreasonable to assume that from the words, if that is *"all*

*you know,*" the lay jury would have gleaned the meaning—"if there is no evidence of mitigating circumstances or diminished capacity.") *The jury were thus effectively, but erroneously, informed that if Lee killed his victim his offense was necessarily murder.*

██ ██ Even more serious error, we conclude, is the trial court's handling of the concept of malice in a case where the defense theory was and, a quantum of substantial evidence tended to establish, diminished capacity. Such definitions of *express malice*—"I'm going to kill you— bang. I point the gun, that's it," and, "express malice is, Satten, I don't like you, goodbye—bang"—were clearly improper. Equally invalid under the circumstances here were those of *implied malice,* such as the following: "If I know when I kill Dr. Satten it is against the law, that the law says I should not kill him, and I go ahead and kill him anyway, that is implied malice"; and that it also exists "If you . . . take a pipe and hit somebody over the head with the pipe and keep on beating him, [and] there is a degree of probability it will result in death, which act is done for a base, antisocial purpose, . . . So if I have the gun and I shoot it and it results in death, which is an antisocial purpose, but I know when I have that gun the law says you are not supposed to kill, I go ahead and rid the world of Dr. Satten anyway, then that is [implied] malice."

Indeed, the latter definition of implied malice, closely adapted to the factual context of Lee's case, "*If you . . . take a pipe and hit somebody over the head with the pipe and keep on beating him,*" etc. (italics added), rather conclusively told the jury that Lee's crime was murder, and his only defense, invalid.

It requires little imagination to appreciate the jury's undoubted lack of consideration of Dr. Satten's opinion that Lee acted *without malice,* when the judge had just finished telling them that, by his admitted use of the pipe upon the victim, Lee had acted *with malice.*

██ We are unpersuaded that the trial court's later jury instructions on diminished capacity erased the prejudicial effect of its earlier and dramatic, but nonetheless erroneous and prejudicial, remarks to the witness and jury. The least that may be said is (1) that the applicable law, as imparted to the jury on Lee's diminished capacity issue, was so inconsistent and confusing as to constitute prejudicial, and thus reversible, error (see *People* v. *Cornett,* 33 Cal.2d 33, 41 [198 P.2d 877]), and (2) that the credibility of Lee's only witness on that issue was drastically and improperly impaired. "Jurors rely with great confidence on the fairness of

judges, and upon the correctness of their views expressed during trials." (*People* v. *Mahoney, supra,* 201 Cal. 618, 626-627.)

The jury's guilty verdict on the issue presented by Lee's not guilty plea will accordingly be set aside.

Trial courts will be well advised to avoid, or at least to exercise great care in, extemporaneous or "off the cuff" comments to juries and witnesses relating to crucial defenses of the criminally accused. Doing so would be in the interest of justice, and would render unnecessary the retrial of actions such as we are now obliged, under our oath, to order.

■ Under the compulsion of *People* v. *Drew, supra,* 22 Cal.3d 333, discarding the M'Naghten and substituting the American Law Institute criteria on a not guilty by reason of insanity plea, and applying the new rule retroactively to cases as are "not yet final," the jury's verdict on the not guilty by reason of insanity plea will also be set aside. We have found such error, also, to be prejudicial.

■ Lee's contention that "Evidence Code section 522 placing the burden of proof on the appellant to prove himself insane is unconstitutional" is meritless. (See *People* v. *Drew, supra,* 22 Cal.3d 333, 348-349.) And as the circumstances giving rise to other of Lee's contentions of error will probably not recur, we make no determination as to them.

The judgment is reversed.

Racanelli, P. J., and Newsom, J., concurred.

A petition for a rehearing was denied June 1, 1979, and respondent's petition for a hearing by the Supreme Court was denied July 5, 1979.