Crim. No. 19734. First Dist., Div. One. Dec. 24, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
WAYNE EDWARD KELLEY, Defendant and Appellant.

1006

**COUNSEL**

Garrett C. Dailey, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Thomas A. Brady, Gloria F. DeHart and Kristofer Jorstad, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ELKINGTON, Acting P. J.**—Defendant Wayne Edward Kelley was convicted upon a jury's verdicts of second degree murder (count 1), and of possession of a concealable firearm while having previously been convicted of a felony in violation of Penal Code section 12021 (count 2). He appeals from the judgment of conviction.

We consider first the appeal as it relates to the second degree murder conviction.

Prosecution witnesses had testified at Kelley's trial, as reasonably condensed by the People's appellate brief, in this manner: "Shortly before noon on April 12, 1978, appellant took a cab to the intersection of

Sacramento and Prince Streets in Berkeley....He was carrying a handgun he had acquired two or three weeks earlier in exchange for two bags of heroin, and he intended to trade the gun back in for more narcotics. Appellant knew the gun was loaded....[¶] Hulan Terry Stewart, who knew both appellant and the victim, John Lewis Agnew, was standing in front of Franklin Liquor Store about 11:30 a.m. on April 12, 1978....Agnew was picking his nails with a Boy Scout type knife, with a curved 3 or 3½ inch blade....Appellant was standing on the corner....Stewart saw Agnew walk toward appellant and heard him say 'I hate to kill a nigger over $20.'...Moments later, Stewart heard the words 'Back off of me,' followed closely by the sound of a gunshot....When Stewart peeked around the corner, he heard another gunshot, and saw appellant shooting the victim with a .38 caliber revolver. Appellant's arm was extended as he took aim, and the victim's body was spinning around and falling to the ground....After the victim hit the ground face down, appellant walked over, stood above him and fired three more rounds into his back....Appellant then put the pistol into his belt and walked across the street where he got into a car and fled...."

Defense witnesses testified as follows: As the victim, Agnew, was saying, "I hate to kill a nigger over $20," and that "he was going to kill," he was approaching Kelley with a knife in his hand. Kelley was backing up, and Agnew "kept coming up on him." When Agnew was about five feet away brandishing the knife, Kelley fired several shots at him "very rapidly."

Kelley's evidence *tended* to establish that the shooting was done in self-defense, and that the homicide was therefore justifiable, *or* at least no more than manslaughter for lack of malice under the doctrine of *People v. Flannel* (1979) 25 Cal.3d 668, 674-680 [160 Cal.Rptr. 84, 603 P.2d 1].

At the trial's close the court properly instructed the jury in respect of first and second degree murder, manslaughter, and self-defense. Thereafter at the jury's request the court again so instructed them. ■ But then, apparently to make the instructions more "clear," the court chose for the first time to instruct, and elaborate, upon Penal Code section 1105.

Penal Code section 1105, as enacted 1872, and as it reads today, states: "Upon a trial for murder, the commission of the homicide by the

defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable."

In the "explanatory" instructions to the jury (three pages of the reporter's transcript) they were, among other things, extemporaneously and repetitiously told: "A kills B. If that is all you know—second degree murder," and "A kills B. Second degree." Variations of this language were repeated at least a dozen times. The jury were then instructed (the italics are ours): "*If you find* that the killing resulted by the defendant or the slayer feeling as a reasonable man he was in danger of death or serious bodily injury, and that he as a reasonable man would feel it was necessary to kill to save his life, and that the threat of this danger still exists, didn't cease, *then it would be self-defense.* [¶] But again, in your thinking always start with murder of the second degree. To go to first, you have got to be satisfied beyond a reasonable doubt that the slayer premeditated and deliberated. If you don't find that, come back to second: A kills B—second degree. Aha, there's a sudden quarrel. Heat of passion—it's manslaughter. If you don't find sudden quarrel and heat of passion, you go back up to second degree: A kills B. Wait a minute. *Maybe this man was in danger of his life, that it was necessary to kill, the danger continues to exist until the time he was shooting—it is justifiable homicide.* [¶] But instead of trying to go from first down or from self-defense up, start with A killing B, second degree, then up or down."

The supplemental instructions were undoubtedly based upon earlier interpretations of section 1105, as exemplified by *People* v. *Howard* (1930) 211 Cal. 322 [295 P. 333, 71 A.L.R. 1385], as follows: "When the killing is proved to have been committed by the defendant, and nothing further is shown, the presumption of law is that it was malicious and an act of murder; but in such a case the verdict should be murder of the second degree, and not murder of the first degree." (P. 329.) "The commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution relieves him of this burden." (*Id.,* p. 330.) To the same effect see *People* v. *Rodriguez* (1920) 182 Cal. 197, 198 [187 P. 423], *People* v. *Matthai* (1902) 135 Cal. 442, 445 [67 P. 694], *People* v. *Mize* (1889) 80 Cal. 41, 45 [22 P. 80], *People* v. *Knapp* (1886) 71 Cal.

1, 6 [11 P. 793], and *People* v. *Ford* (1927) 85 Cal.App. 258, 263 [258 P. 1111].

But in 1948, Justice (later Chief Justice) Roger Traynor undertook for the state's Supreme Court, in *People* v. *Cornett* (1948) 33 Cal.2d 33 [198 P.2d 877], to reconcile section 1105's presumption of malice and thus guilt and its correlative burden upon the accused himself to prove absence of malice and thus a lesser offense or his innocence, with developing notions of fairness and due process.

■ *People* v. *Cornett* holds: "This section does not set forth a rule relating to the burden of proof, but merely declares *a rule of procedure that imposes on the defendant only a duty of going forward with the evidence of mitigating circumstances....* It was held in several early cases that the defendant under this section has the burden of proving mitigating circumstances by a preponderance of the evidence.... It is now established, however, that the defendant is not required to prove mitigating circumstances by a preponderance of the evidence, *but need only introduce evidence of such circumstances to raise a reasonable doubt of his guilt.*" (33 Cal.2d, p. 42; italics added.)

The language of *Cornett* which we have emphasized is sometimes misunderstood. The "duty of going forward with the evidence of mitigating circumstances" sufficient "to raise a reasonable doubt of his guilt" in order to overcome section 1105's presumption, imposes no burden upon the defendant that he create such a reasonable doubt in the minds of the jury. Instead: "[T]he judge must determine whether there is evidence sufficient to sustain a finding of the nonexistence of the presumed fact. If there is such evidence, the presumption disappears and the judge need say nothing about it in his instructions." (See Evid. Code, § 604 [Effect of presumption affecting burden of producing evidence], and Legis. Committee coms. thereto, Deering's and West's Ann. Evid. Code.) "[T]he *mere introduction of evidence* sufficient to sustain a finding of the nonexistence of the presumed fact causes the presumption, as a matter of law, to disappear." (Our italics; *Slater* v. *Kehoe* (1974) 38 Cal.App.3d 819, 833 [113 Cal.Rptr. 790].) And *People* v. *Cornett* otherwise emphasizes that section 1105 imposes no "burden of persuasion" upon the defendant, that it would be error to require him to prove "the existence of such circumstances by a preponderance of the evidence or by some other degree of proof" (33 Cal.2d, p. 43), and "that the prosecution has the burden throughout the entire trial to

prove every element of the crime beyond a reasonable doubt, and that the burden of persuasion never shifts to the defendant" (*id.*, p. 44).

The holding of *People* v. *Cornett* was restated and elaborated at length, by Justice Traynor in *People* v. *Deloney* (1953) 41 Cal.2d 832, 840-842 [264 P.2d 532], with the added admonition (p. 841) "that a jury should not be instructed in the language of section 1105." Other authority holds: "The law is perfectly clear to the effect that section 1105 places no burden of persuasion on the defendant, but merely declares a rule of procedure imposing on him the duty of going forward with evidence sufficient to raise a reasonable doubt of his guilt of murder" (*People* v. *Garcia* (1972) 27 Cal.App.3d 639, 647 [104 Cal.Rptr. 69]; and "It was error for the trial court to give the jury an extemporaneous instruction which shifted to the defendant the burden of proof that the homicide had been committed in self-defense" (*People* v. *Banks* (1976) 67 Cal.App.3d 379, 383 [137 Cal.Rptr. 652]).

But beyond any doubt the most thorough present-day analysis of the effect of Penal Code section 1105 will be found in *People* v. *Loggins* (1972) 23 Cal.App.3d 597, 600-605 [100 Cal.Rptr. 528] (hg. by Supreme Ct. den.), from which, eliminating many citations, we briefly excerpt: "Although section 1105 literally mentions the defendant's 'burden of proving' mitigation or justification, a number of decisions reveal a more limited objective. It is evoked only when the defendant is charged with murder, a crime which includes malice aforethought as an essential element. Malice may be inferred—according to authoritative decisions, even presumed—from the circumstances. . . . Thus, in a murder trial, when the prosecution evidence reasonably permits the inference that the defendant killed the decedent without justification and without mitigating circumstances, no further proof of malice is necessary to sustain a second degree murder verdict. . . . At that point, section 1105 supplies a rule of procedure for the conduct of trial: *If the defense is* mitigation—that is, reduction to manslaughter—or justification—*for example, self-defense—the defendant should then come forward with enough evidence to raise a reasonable doubt of guilt in the mind of the fact trier* . . . . [¶] According to the cited cases, section 1105 does not shift a burden of persuasion to the defendant, *but only beckons him to come forward with his evidence.*" (23 Cal.App.3d, p. 601; italics added.)

*"Cloaked in whatever verbalisms, section 1105 should be excluded from jury instructions.* Beyond the apparent fact that it generates more

difficulty than value, it is none of the jury's affair and plays no legitimate role in their deliberations. By the time the court instructs the jury, section 1105 has fulfilled its role in the trial. Having disappeared from the scene, it plays no part in the jury deliberations." (*Id.*, pp. 602-603; italics added, fn. omitted.)

"[When the defense rests] the defendant may have produced some evidence of mitigation or justification. If he has, section 1105 has then fulfilled its role. Even if the inference of malice is raised to the level of a presumption, the presumption is not one affecting the burden of proof, but one affecting the burden of producing evidence. (Evid. Code, §§ 601-607.) When the latter kind of burden is fulfilled, the presumption disappears, and the jury must then determine the question of malice without regard to it. . . . Because section 1105 has fulfilled its office when the defense produces evidence of mitigation or justification, an instruction injecting its concept into the jury's deliberations serves no purpose." (*Id.*, p. 603.)

It is noted also that the editors of California Jury Instructions, Criminal, have deleted a former instruction (CALJIC No. 5.15) based upon Penal Code section 1105, with the following explanation: "This instruction is deleted, it having been held that the concept underlying Penal Code, section 1105 is not pertinent to the jury's deliberations. People v. Loggins, 23 Cal.App.3d 597, 100 Cal.Rptr. 528." (See 1974 cum. pocket pt. for 3d rev. ed.)

There have been, as we have indicated, occasional judicial determinations which appear to have overlooked the holding and rationale of *People* v. *Cornett* and its lineage; e.g., *People* v. *Theriot* (1967) 252 Cal.App.2d 222, 239 [60 Cal.Rptr. 279], *People* v. *Hall* (1963) 212 Cal.App.2d 480, 482 [28 Cal.Rptr. 164], and *People* v. *Todd* (1957) 154 Cal.App.2d 601, 607 [317 P.2d 40]. But such cases, we opine, are outweighed by the greater authority and better reasoning of the *People* v. *Cornett* holding.

We observe further that the rule of *People* v. *Cornett* has now been elevated to constitutional station by *Mullaney* v. *Wilbur* (1975) 421 U.S. 684 [44 L.Ed.2d 508, 95 S.Ct. 1881], *passim.* There the law of Maine had provided that: "Absent justification or excuse, all intentional or criminally reckless killings are felonious homicides. Felonious homicide is punished as murder—*i.e.*, by life imprisonment—unless the

defendant proves by a fair preponderance of the evidence that it was committed in the heat of passion on sudden provocation, in which case it is punished as manslaughter ...." (421 U.S., pp. 691-692 [44 L.Ed.2d at p. 515].) (It will be seen that insofar as it placed the burden of proving mitigating circumstances upon the defendant the law was closely similar to that of Pen. Code, § 1105.) The high court held "that the Due Process Clause requires the prosecution to prove beyond a reasonable doubt the absence of the heat of passion on sudden provocation [i.e., mitigating circumstances] when the issue is properly presented in a homicide case." (*Id.*, p. 704 [44 L.Ed.2d at p. 522].) It thus iterated, as federal constitutional doctrine, the rule long ago stated by Justice Traynor in *People v. Cornett.*

■ We accordingly find error in the trial court's extemporaneous instructions.

The jury should not have been instructed in respect of Penal Code section 1105. "Cloaked in whatever verbalisms, section 1105 should be excluded from jury instructions." (*People v. Loggins, supra*, 23 Cal. App.3d 597, 602-603.) The jury were *not* bound to find Kelley guilty of second degree murder unless they should *"find"* facts establishing mitigating circumstances such as that he acted in self-defense, or lacked the malice essential to a conviction of murder. Instead it was the jury's duty to find him not guilty of murder unless the prosecution met its burden of proving him guilty of it beyond a reasonable doubt. "[T]he prosecution has the burden...to prove every element of the crime beyond a reasonable doubt, ..." (*People v. Cornett, supra*, 33 Cal.2d 33, 44.)

We find further error in the *repetitious* instructions, "A kills B. If that is all you know—second degree murder" and, even more so, in the occasional unqualified language, "A kills B. Second degree." Such judicial emphasis upon "second degree murder" in the last instructional language heard by the jury is improper. As said in *People v. Ranney* (1931) 213 Cal. 70, 78 [1 P.2d 423]: "'It is doubtful if any separate or detached instruction could be held to have cured the error in this instruction, given at the end of the charge, and twenty-one times repeated. It contains a definite direction, upon the finding of a certain fact, to find the defendant guilty.'" See also the opinion of the Supreme Court upon denial of a hearing in *People v. Bickerstaff* (1920) 46 Cal. App. 764, 775 [190 P. 656]: "Repetitions of this character are not necessary and should be avoided as far as possible.... The trial judge

should take care to give to the jury, once in clear language, every principle of law applicable to the particular case. When he has done this, he is not required to repeat any of them, ...Such continual repetition tends to give undue emphasis to the particular point to which they may relate and operates to confuse the jury in their consideration of the evidence."

The Attorney General has conceded: "It is error, of course, for a trial court to tell a jury that *any* burden of proof rests on the defense as to the general issue of guilt. More specifically, the procedural agenda set up in Penal Code section 1105 'should be excluded from jury instructions.'" But he argues, *unpersuasively*, that other instructions, earlier given, including the reasonable doubt instruction "fully discharged the trial court's obligation to assign the burden of proof exclusively to the prosecution." "Prejudice from an erroneous instruction in a criminal case is not cured by the giving of a correcting instruction on the same subject where the two instructions are contradictory or so inconsistent as to confuse the jury and to make it impossible for the reviewing court to know which of the two instructions they actually followed." (*People v. Rhoden* (1972) 6 Cal.3d 519, 520 (3) [99 Cal.Rptr. 751, 492 P.2d 1143].)

We are unable to conclude that the error was harmless according to the criteria of the state's Constitution, article VI, section 13, Penal Code section 1258, *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243] (cert. den., 355 U.S. 846 [2 L.Ed.2d 55, 78 S.Ct. 70]), and *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065]. The judgment will therefore be reversed as to the finding of second degree murder.

With one exception, the circumstances giving rise to other of Kelley's claims of error will probably not recur at his retrial.

■ The excepted contention is that the trial court should have given Kelley's proffered jury instructions on the concept of diminished capacity. It is based upon a psychiatrist's conclusional testimony that Kelley had "an abnormal state of mind" preventing formation of "malice." The conclusion, the doctor said, was based upon Kelley's inordinate "fear of knives," which "went beyond that fear which has been expressed to me by 20 or 25 people who have been either threatened with or attacked with knives—very different quality to the way he talks about it."

But the doctor had insisted throughout his testimony that Kelley was afflicted, on the occasion of the homicide, with *neither a "mental illness" nor a "mental defect"* and further, that the homicidal act was "not irresistible in the sense of volition, . . ." And we observe that there was a lack of any evidence indicating Kelley's *"intoxication."*

It now seems thoroughly established that the "essence of a showing of diminished capacity is a 'showing that the defendant's mental capacity was reduced by *mental illness, mental defect or intoxication.'"* (*People v. Berry* (1976) 18 Cal.3d 509, 517 [134 Cal.Rptr. 415, 556 P.2d 777].) Without such a showing, instructions on diminished capacity are inappropriate. Further, the doctor's testimony appears to have been based entirely on Kelley's statements about his great fear of knives, a not unusual attitude. The weight to be given an expert's opinion "'depends on the reasons he assigns to support that opinion.'" (*White* v. *State of California* (1971) 21 Cal.App.3d 738, 759 [99 Cal.Rptr. 58]; *Gazzera v. City and County of S.F.* (1945) 70 Cal.App.2d 833, 838 [161 P.2d 806].)

We conclude that the trial court reasonably found the witness' testimony to be "minimal and insubstantial" according to the "diminished capacity" instructional requirements of *People* v. *Flannel, supra,* 25 Cal.3d 668, 684-685. The requested instructions were properly rejected.

Kelley makes no contention of error in respect of his Penal Code section 12021 conviction. As to that finding of the jury the judgment will be affirmed.

The judgment is affirmed as to the finding of guilt under count 2 of the information charging possession of a concealable firearm by one previously convicted of a felony in violation of Penal Code section 12021; it is reversed as to the finding of second degree murder under count 1 of the information.

**GRODIN, J.,** Concurring.—Making standard homicide instructions more intelligible to the jury is a worthy goal, and one I share with our dissenting colleague. To pursue that goal through extemporaneous remarks to the jury, however, is a risky venture even, as this case demonstrates, for an exceptionally able and experienced jurist.

In concluding that the error was harmless our dissenting colleague focuses entirely upon the prosecution's evidence, and ignores the defendant's evidence which, of course, the jury may have believed.

According to defense witnesses, the defendant was being assaulted by a man with a knife who called him a "nigger" and threatened to kill him. To say that these circumstances could provide no "rational basis" for a finding that the defendant shot Agnew in a heat of passion (cf. *People* v. *Valentine* (1946) 28 Cal.2d 121 [169 P.2d 1]) or on the basis of an unreasonable belief in the necessity of self-defense, and thus without the "malice" requisite to the crime of murder (cf. *People* v. *Flannel* (1979) 25 Cal.3d 668 [160 Cal.Rptr. 84, 603 P.2d 1]), imports a standard of "rationality" which injects the court far more deeply into the thought processes of the jury than in my view is warranted under existing authority.

"A trial court should not ... measure the substantiality of the evidence by undertaking to weigh the credibility of the witnesses, a task exclusively relegated to the jury." (*People* v. *Flannel, supra,* 25 Cal.3d at p. 684.) "Doubts as to the sufficiency of the evidence to warrant instructions should be resolved in favor of the accused." (*People* v. *Wilson* (1967) 66 Cal.2d 749, 763 [59 Cal.Rptr. 156, 427 P.2d 820]; *People* v. *Flannel, supra,* at p. 685.) To suggest that there was no "rational basis" for a finding of voluntary manslaughter in this case is equivalent to suggesting that a failure to give an instruction on voluntary manslaughter would not have been reversible error; but, as the foregoing authorities demonstrate, that is clearly not the law.

I note that the defendant asserts a number of additional grounds for reversal which have arguable merit but which, due to my concurrence in the principal opinion, I find it unnecessary to reach.

**NEWSOM, J.**—I dissent.

This is, of course, not the first time that Judge Golde's improvised homicide instructions have been challenged on appeal,* nor the first time that I have disagreed with my respected colleagues concerning, not necessarily the correctness of the questioned instructions in the context

---

*Compare, for example, *People* v. *Lee* (1979) 92 Cal.App.3d 707, 714 [155 Cal.Rptr. 128].

of a murder trial, but their impact on the thought-process of the jury under the precise circumstances of a given case.

After shooting Lewis twice and watching him fall helpless, face down on the ground, appellant calmly walked over, stood over him and fired three more rounds into the back of his head. On what rational basis could so deliberate and brutal an act have been viewed as manslaughter? Surely the use of a vulgar racial epithet by one black man to another in an East Bay ghetto area, or the very generalized "threat" directed at appellant by the victim, who then walked away from appellant, provide no such basis. I am mindful, too, that after the initial two shots were fired half a minute elapsed before appellant fired the second burst of shells into his victim's inert body.

Judge Golde's statement that "A kills B. If that is all you know—second degree murder," and related homely attempts to make intelligible the opaqueness of the standard homicide instructions, could not in my view reasonably divert a juror from a finding of manslaughter on the facts of this case.

I conclude—especially in light of the otherwise unassailably correct and complete homicide instructions—that the instructional error, if any, was harmless within the meaning of both *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; California Constitution, article VI, section 13; and *Chapman* v. *California* (1976) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065].

A petition for a rehearing was denied January 20, 1981. Newsom, J., was of the opinion that the petition should be granted. Respondent's petition for a hearing by the Supreme Court was denied February 18, 1981.