[Crim. No. 17625. In Bank. June 3, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH MARIO MARTINEZ, Defendant and Appellant.

534

---

## COUNSEL

David M. Blackman, under appointment by the Supreme Court, and William J. Owen for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler and Edward A. Hinz, Jr., Chief Assistant Attorneys General, William E. James, Assistant Attorney General, Arnold O. Overoye, James T. McNally and Gregory W. Baugher, Deputy Attorneys General, for Plaintiff and Respondent.

---

## OPINION

**CLARK, J.**—Defendant appeals from judgment entered on a jury verdict convicting him of grand theft (auto). (Pen. Code, § 487, subd. 3.) Defendant's mid-trial motion to suppress evidence as being the product of an illegal search was denied on the ground his failure to have made the motion prior to trial was inexcusable.[1] Defendant contends the untimeliness of the motion should have been excused, alleging he was previously unaware of the grounds for suppression. Defendant alternatively concedes the suppression motion was untimely but contends he was thereby denied effective assistance of counsel. We affirm the judgment.

---

[1]Subdivision (h) of section 1538.5 provides: "If, prior to the trial of a felony or misdemeanor, opportunity for this [suppression] motion did not exist or the defendant was not aware of the grounds for the motion, the defendant shall have the right to make this motion during the course of trial in the municipal, justice or superior court."

One evening victim Wayne H. decided to leave his wife. He packed his belongings, including an overnight bag containing his automobile pink slip, and drove to the Gold Nugget bar and card room, leaving the keys in the ignition. Three hours later, he discovered his car missing. He telephoned his wife, ascertaining she had not taken the car, then walked home and called the police.

Claiming to have had only three beers at the bar and nothing before, Mr. H. testified he was sufficiently sober that evening to know whether he had loaned his car to anyone, and that he had not. He denied drinking with or even speaking to defendant that evening. However, a police officer testified that Mr. H. was "pretty drunk" during their interview, and that a stolen vehicle report was not filed because Mr. H. could not remember his license number. A report was filed two days later.

The following morning four narcotics officers executed a search warrant for the apartment of Robert Rameriz, finding a hypodermic kit. A woman present said Rameriz was out, possibly obtaining narcotics. Two of the officers remained in the apartment while the other two watched from an unmarked car. Around noon, defendant, Rameriz, Gregory Tabaras and Rudy Savala drove up to Rameriz' apartment and parked behind an Oldsmobile. (The Oldsmobile was Mr. H.'s car, but because of the lag in filing the stolen vehicle report, the records check run by the officers at the scene failed to reveal this.) They transferred what appeared to be a battery from under the hood of Rameriz' car to the Oldsmobile. Defendant and Tabaras then drove away in the Oldsmobile. When they returned the officers detained them, requesting identification. After defendant produced some identification, Agent Leonard searched defendant's pockets, finding the pink slip to the Oldsmobile. Defendant subsequently gave the Oldsmobile keys to Officer Clifton.

Defendant testified as follows: A man introducing himself as "Bob," but whom he later learned to be Wayne H., bought defendant a beer in the Gold Nugget that evening, repeatedly inquired whether he knew of a brothel, and eventually invited him out to the parking lot for a drink from a bottle he kept in his car. After several drinks, defendant asked "Bob" for a ride home to get money to join a game in the card room. "Bob" declined, saying he was too drunk to drive himself, but loaned defendant his car. Defendant returned within an hour, but "Bob" was gone. After waiting for over an hour, defendant drove home again.

Looking in the glove compartment for some identification the next morning, defendant found the pink slip and surmised that "Bob" might himself have borrowed the car from Wayne H. While again driving to the Gold Nugget in search of "Bob," defendant noticed his friend Rameriz working on a car. Rameriz' battery was dead, so they replaced it with "Bob's." They then drove to a nearby service station in Rameriz' car, leaving his battery to be recharged while they continued to the Gold Nugget. Still not having found "Bob," they picked up Rameriz' battery, returned to his home, and restored the batteries to the cars from which they came. Defendant then gave Tabaras a ride to a store. When defendant returned to pick up Savala, he was arrested.

Subdivision (h) of section 1538.5 of the Penal Code provides a defendant shall have the right to make a motion to suppress evidence during trial if, prior to trial, "opportunity for this motion did not exist or the defendant was not aware of the grounds for the motion."

Defendant contends his failure to have made the motion prior to trial should have been excused because his counsel was unaware of the grounds for suppression until Agent Leonard testified at the mid-trial suppression hearing. Had defense counsel's access to information concerning the case been limited to the transcript of the preliminary hearing, the grounds for the motion would not have been as apparent before as they were after Agent Leonard testified at trial. Neither Leonard nor defendant testified at the preliminary hearing. Officer Clifton did testify at the preliminary hearing, but his testimony did not clearly indicate whether the pink slip was the product of a search.[2]

However, counsel was not limited to the preliminary hearing transcript. He could have learned the grounds for a pretrial suppression motion by simply interviewing his client.[3] Moreover, the fact that Officer

---

[2] "Q . . . do you know at what point Agent Leonard discovered the pink slip of the automobile? [¶] A He advised me that he had observed the pink slip on the person of Mr. Martinez on the street when he asked Mr. Martinez for his identification papers, and it was in the papers. [¶] Q And did he tell you where he—well, strike that. Did you observe that pink slip? [¶] A Not until after the keys were given to me by Mr. Martinez. [¶] Q Did you see the pink slip removed from any part of Mr. Martinez's clothing? [¶] A Did I see it removed? [¶] Q ([Defendant's counsel] nods affirmatively.) [¶] A I saw groups of papers in his hand. I couldn't see if the pink slip was among them, no, sir."

[3] At the hearing on the motion to suppress held during trial, defendant testified: ". . . Officer Leonard came at me pretty fast and slapped one of my arms—I had one of my arms down below on my side, and he—he—I forget what side, but he slapped me up—he said, 'Put your arms on top of the car,' and I put my arms on top of the car, and he started searching me. He started pulling papers and whatever I had in my pockets out of

Clifton's testimony raised more questions than it answered put counsel on notice of the advisability of further testing the legality of the seizure prior to trial.

■ Impliedly conceding counsel should have been aware of the grounds for a suppression motion prior to trial, defendant contends counsel's inexcusable failure to have made a timely motion constituted ineffective representation.

■ Defendant bears the burden of establishing his counsel's ineffectiveness. (*People* v. *Stanworth* (1974) 11 Cal.3d 588, 613 [114 Cal.Rptr. 250, 522 P.2d 1058]; *In re Downs* (1970) 3 Cal.3d 694, 698 [91 Cal.Rptr. 612, 478 P.2d 44].) "The proof of this inadequacy or ineffectiveness must be a demonstrable reality and not a speculative matter." (*People* v. *Stephenson* (1974) 10 Cal.3d 652, 661 [111 Cal.Rptr. 556, 517 P.2d 820]; see *People* v. *Strickland* (1974) 11 Cal.3d 946, 956 [114 Cal.Rptr. 632, 523 P.2d 672].)

The record must establish that counsel was ignorant of the facts or the law, resulting in withdrawal of a crucial defense, reducing the trial to a "farce and a sham." (*People* v. *Stanworth, supra,* 11 Cal.3d at p. 612; *People* v. *Ibarra* (1963) 60 Cal.2d 460, 466 [34 Cal.Rptr. 863, 386 P.2d 487].) "Cases involving a failure to make these careful factual and legal inquiries and investigations necessary to a constitutionally adequate defense are to be distinguished, of course, from cases wherein counsel, *having made such inquiries and investigations,* makes tactical or strategic decisions—whether wise or unwise when viewed with the benefit of hindsight—which cause him not to utilize the fruits of his labors." (*In re Saunders* (1970) 2 Cal.3d 1033, 1042, fn. 7 [88 Cal.Rptr. 633, 472 P.2d 921]; italics in original.)

■ Defendant has not made the necessary showing. The record does not establish that counsel's failure to have made a timely suppression motion resulted from ignorance of the facts or the law. Moreover, there is absolutely no support in the record for appellate counsel's allegation that "[r]esponsibility for the pretrial motion in this case was lost in the shuffle of changing assignments" in the public defender's office.

---

my pockets, and at the same time he asked me if I had any dope on me, and I told him, no, I didn't. And he looked through my papers and, ah, he pulled out a hypodermic needle inside of a plastic casing, out of one of my pockets, and he advised me that I was under arrest for possession of paraphernalia and he handcuffed me, took us upstairs, took me upstairs along with Tabaras."

■ Assuming arguendo that the court erred by permitting the People to impeach defendant with an extrajudicial statement obtained from him in violation of his rights under *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], the error was harmless beyond a reasonable doubt in light of the overwhelming evidence of guilt.

Defendant further contends he was prejudiced by allegedly conflicting instructions. We have examined the contention and find it meritless.

The judgment is affirmed.

McComb, J., Tobriner, J., Mosk, J., and Burke, J.,* concurred.

Wright, C. J., and Sullivan, J., concurred in the judgment.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.