[No. C044540. Third Dist. Apr. 20, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
BRICE ALTON FRAZIER, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part VI.

**COUNSEL**

Nick & Vizzi, J. David Nick, Ean Vizzi and E. Michael Linscheid for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Janis Shank McLean and David A. Rhodes, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**ROBIE, J.**—Convicted of cultivation of marijuana, possession of marijuana for sale, and several other charges, defendant challenges the jury instruction the trial court gave (CALJIC No. 12.24.1) on the Compassionate Use Act of 1996.[1] He argues the portion of that instruction which states, "[t]o establish the defense of compassionate use, the burden is upon the defendant to raise a reasonable doubt as to guilt of the unlawful possession or cultivation of marijuana," impermissibly "suggest[s] to the jury that a criminal defendant has the burden to prove his own innocence." It does not. This instruction accurately states the defendant's obligation to raise a reasonable doubt that his possession was unlawful. (*People v. Mower* (2002) 28 Cal.4th 457, 481 [122 Cal.Rptr.2d 326, 49 P.3d 1067] (*Mower*).) We further reject defendant's challenges to the trial court's instructions on who may be a primary caregiver under the Compassionate Use Act, the application of the Medical Marijuana Program Act,[2] the denial of defendant's motion to suppress brought on the first day of trial, and defendant's challenge to the imposition of the upper term sentence. We shall affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A

### *November 2001 Search*

Detectives searched defendant's property in Tehama County (the ranch) on November 1, 2001. Several buildings were located on the property: a home, a mobilehome, a shop, and several smaller storage structures.

During the initial entry on the property, Detective Richard Davidson saw marijuana leaves in the bed of a pickup truck, scattered in front of the shop building, and marijuana plants in the shop. Detectives entered the mobile-home on the ranch because the man who lived there was on probation. Next, detectives secured the property (including entering the main home) and obtained a search warrant.

During the subsequent search of the home, detectives found gardening tools and marijuana shake;[3] a coffee tin of marijuana shake; books on how to grow marijuana; two rifles, a loaded .357 pistol and gun parts; and two .357 bullets.

---

[1] Health and Safety Code section 11362.5. All further statutory references are to the Health and Safety Code unless otherwise indicated.

[2] Section 11362.7 et seq.

[3] Marijuana shake is leaf and bud residue left over from the processing of marijuana.

In the large shop and shed, the detectives discovered a table with a large amount of marijuana buds drying on it; 11 marijuana plants hanging to dry; and eight more stems from marijuana plants with no root balls on them. Detectives found a garden area on the property used to grow the marijuana, but no plants were in the garden. Based on the large quantity of marijuana, the sophistication of the growing operation, and the presence of firearms, Detective Davidson testified this marijuana was possessed for sale.

## B

### *July 2002 Search*

Pursuant to a second search warrant, detectives searched the ranch in July 2002. Defendant was present and admitted he was growing marijuana. Defendant directed detectives to the location of the key for the locked storage room where the guns were discovered during the 2001 search.

In the house, detectives found a small amount of marijuana; .28 grams of methamphetamine in a metal tin with a straw and defendant's AAA card; additional ammunition; a gun clip; a digital scale; and a triple beam scale.

In the garden, detectives found 16 three-foot-high marijuana plants. The fence around that garden was locked and the key was in defendant's car. Detective Davidson concluded this marijuana was possessed for sale.

## C

### *Evidence of Sales*

Defendant's caretaker, Wayne Vansickle, saw marijuana at the property during both 2001 and 2002. Vansickle stated that defendant admitted he sold the marijuana in the Bay Area for $3,000 to $4,000 a pound. Once, Vansickle saw defendant take money in exchange for a paper bag of marijuana.

Defendant's stepson, Michael Ferrell, testified at trial that he did not know whether defendant sold marijuana, while in a prior interview with detectives he told them defendant had sold marijuana.[4]

## D

### *Medical Marijuana Testimony*

Defendant testified on his own behalf and admitted he grew marijuana on the ranch every year since he purchased it in 1999. Prior to September 2001,

---

[4] Ferrell claimed officers had threatened him while the tape recorder was off. Detective Davidson denied this allegation.

defendant had a full-time job and only came to the ranch on the weekends. After September 2001, defendant lived at the ranch full time. During 2002, defendant lived at the ranch only a minimal amount of time prior to early summer, and then full time after that.

Defendant presented the testimony of Philip Denney, M.D. Dr. Denney testified he first examined defendant in April 2000. He took a medical history from defendant. Defendant has chronic hepatitis type C and presented Dr. Denney with medical records supporting this diagnosis. Dr. Denney concluded defendant had a serious medical condition that would benefit from the use of marijuana and recommended that defendant use marijuana. Dr. Denney's written physician's statement approving defendant's use of marijuana is dated June 4, 2001.

Defendant's wife and stepson (Ferrell) also sought treatment from Dr. Denney. His wife claimed she had migraine headaches and symptoms related to her menstrual cycle. Ferrell sought treatment from Dr. Denney in 2000 for a chronic pain condition in his right shoulder and neck. Dr. Denney took medical histories from defendant's wife and Ferrell, reviewed their records, and recommended that both use marijuana to treat their conditions. Their written recommendations were also dated June 4, 2001.

Kristy Callison, defendant's ex-sister-in-law, also obtained a written recommendation to use marijuana from Dr. Denney to treat pain related to her systemic lupus.

Defendant's wife and stepson asked him to grow marijuana for them prior to the November 2001 search. Defendant testified that prior to the July 2002 search, he was growing the marijuana for himself, his wife, and Callison.

Callison testified she gave defendant permission to grow marijuana for her in 2002. Neither Callison nor Ferrell, however, ever received any marijuana from defendant.

Defendant self-administered the marijuana by eating it in baked goods and smoking it. He used about a half an ounce a week in baked goods and smoked another ounce each week. Defendant's wife testified that smoking it was the only way she knew how to take marijuana. She preferred to smoke it with a pipe. During the rebuttal phase, however, Detective Davidson testified that there were no pipes or rolling papers located at the house during the search.

E

### Gun and Methamphetamine Evidence

Ralph Ott, one of defendant's neighbors, testified that during one encounter with defendant, defendant yelled at Ott, "I'll kick your ass. I'll get my guns. You want to play guns? I've got a lot of guns. I'm going to kick your ass." Ott testified he also had observed defendant with a pistol or rifle in his hands perhaps a half-dozen times. During another encounter in September of 2002, defendant told Ott to "get out before you get hurt" and fired the rifle he was carrying into the ground. Vansickle and defendant also went shooting together in the summer of 2001.

Defendant's stepson and his daughter-in-law both told detectives they had seen defendant with guns on the property. During trial, however, Ferrell denied he saw defendant with any guns and claimed the guns were kept upstairs in his mother's closet and she was the only one who had the key.

Defendant's wife claimed ownership of the guns found at the ranch and asserted defendant never shot those guns or had access to them. Defendant echoed this testimony. In attempting to discredit Ott and Vansickle's testimony, defendant explained that his relationships with both men were poor.

Defendant disclaimed any knowledge of the methamphetamine found in his house. He claimed never to have used it in his house and not to have brought it into the house. On cross-examination, he admitted he had a prior history of methamphetamine use. Defendant admitted that he had been convicted of robbery with the use of a gun and having been an ex-felon in possession of a gun.

F

### Verdict

The jury found defendant guilty of two counts of cultivation of marijuana, two counts of possession of marijuana for sale, one count of possession of methamphetamine, two counts of possession of ammunition by a felon, and one count of possession of a firearm by a felon. They found him not guilty of one count of possession of a firearm by a felon. The trial court sentenced defendant to 10 years in state prison. Defendant timely appealed. (Cal. Rules of Court, rule 2(a).)

DISCUSSION

I

*The Trial Court's Instruction on the Compassionate Use Act
Defense Was Proper*

Defendant argues that CALJIC No. 12.24.1 "improperly instruct[s] the jury by suggesting that the 'burden' is upon the defendant to 'raise' a reasonable doubt as to guilt, [and] improperly suggest[s] to the jury that a criminal defendant has the burden to prove his own innocence." We disagree.

The Compassionate Use Act of 1996 was enacted "[t]o ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where that medical use is deemed appropriate." (§ 11362.5, subd. (b)(1)(A).) Section 11362.5, subdivision (d), states: "Section 11357, relating to the possession of marijuana, and Section 11358, relating to the cultivation of marijuana, shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician."

Defendant claims his only burden under the Compassionate Use Act is to raise the issue of his compassionate use and then the burden remains with the prosecution to prove beyond a reasonable doubt that he has no defense of compassionate use. He is wrong.

■ " '[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' [Citation.] But a state has the power 'to regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion . . . .' [Citation.] [¶] A state may allocate the burden of persuasion to a criminal defendant through the device of an affirmative defense. The United States Supreme Court has afforded the states wide latitude in designating affirmative defenses." (*People v. Fuentes* (1990) 224 Cal.App.3d 1041, 1044 [274 Cal.Rptr. 17].) There is no constitutional imperative that " 'a State must disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused.' [Citation.]" (*Id.* at p. 1045.) The compassionate use defense is one such defense.

■ In *Mower*, the Supreme Court concluded the defendant has the burden of proof as to the facts underlying the defense of the Compassionate Use Act. ■ It based its conclusion on the rule of "convenience and necessity,"

which states "unless it is 'unduly harsh or unfair,' the 'burden of proving an exonerating fact may be imposed on a defendant if its existence is "peculiarly" within his personal knowledge and proof of its nonexistence by the prosecution would be relatively difficult or inconvenient.' [Citation.]" (*Mower, supra,* 28 Cal.4th at p. 477.)

■ The *Mower* court also held "as to the facts underlying the defense provided by section 11362.5(d), defendant is required merely to raise a reasonable doubt." (*Mower, supra,* 28 Cal.4th at p. 481.) The Supreme Court began its analysis of this issue by examining Evidence Code section 501 and the California Law Revision Commission commentary on that section. Evidence Code section 501 provides, "[i]nsofar as any statute, except Section 522, assigns the burden of proof in a criminal action, such statute is subject to Penal Code Section 1096." ■ The court further quoted the California Law Revision Commission commentary to section 501 that states, " '[Evidence Code] Section 501 is intended to make it clear that the statutory allocations of the burden of proof . . . are subject to Penal Code Section 1096, which requires that a criminal defendant be proved guilty beyond a reasonable doubt, i.e., that the statutory allocations do not (except on the issue of insanity) require the defendant to persuade the trier of fact of his innocence. Under Evidence Code Section 522, as under existing law, the defendant must prove his insanity by a preponderance of the evidence. [Citation.] *However, where a statute allocates the burden of proof to the defendant on any other issue relating to the defendant's guilt, the defendant's burden, as under existing law, is merely to raise a reasonable doubt as to his guilt.* [Citation.] [Evidence Code] Section 501 also makes it clear that, when a statute assigns the burden of proof to the prosecution in a criminal action, the prosecution must discharge that burden by proof beyond a reasonable doubt.' [Citation.]" (*Mower, supra,* at p. 479.)

The Supreme Court noted that defendants must raise a reasonable doubt as to the underlying facts of many affirmative defenses, including alibi; unconsciousness; duress; defenses justifying, excusing, or mitigating the commission of a homicide; defense of another to a charge of homicide; self-defense to a charge of assault; defense of a reasonable and good faith belief of consent to a rape or kidnapping charge; lawful arrest to a charge of false imprisonment; and exemption under the state securities laws to a charge of violating those laws. (*Mower, supra,* 28 Cal.4th at p. 479 & fn. 7.) These defenses relate to the defendant's guilt or innocence of the crime charged. (*Id.* at p. 479.)

■ The court pointed out that the most closely aligned affirmative defenses to the compassionate use defense are those of possession of a dangerous drug with a prescription, the defense of lawful acquisition of a

hypodermic needle as to a charge of unlawful possession of that item, and the defense of prescribing narcotics to an addict under lawful conditions. (*Mower, supra*, 28 Cal.4th at p. 480.) In each of these three defenses, the defense negates the "unlawful" element involved in the possession or prescription. (*Ibid.*) By parallel reasoning, the *Mower* court concluded the compassionate use defense negates the "unlawful" element of possessing or cultivating marijuana. (*Id.* at p. 482.) As a result, the defendant has the burden of proof to raise a reasonable doubt as to the facts underlying this defense. (*Id.* at pp. 481–482.)

■ Further, the *Mower* court held: "A trial court must instruct the jury on the allocation and weight of the burden of proof [citations], and, of course, must do so correctly. It must give such an instruction even in the absence of a request [citation], inasmuch as the allocation and weight of the burden of proof are issues that 'are closely and openly connected with the facts before the court, and . . . are necessary for the jury's understanding of the case' [citation]." (*Mower, supra*, 28 Cal.4th at pp. 483–484.) ■ Thus, defendant may not merely point to the defense, but has the burden to raise a reasonable doubt about the facts underlying this defense. Given the unequivocal mandate of *Mower*, the trial court must instruct the jury on these concepts.

Defendant further argues that *People v. Kelley* (1980) 113 Cal.App.3d 1005, 1010–1011 [170 Cal.Rptr. 392], stands for the proposition that the defendant's only burden relative to an affirmative defense is to produce evidence, not to persuade the jury of any particular fact. Defendant misapprehends his burden.

*People v. Kelley* dealt with whether the trial court should instruct the jury on former Penal Code section 1105[5] (hereafter section 1105) in a murder trial. (*People v. Kelley, supra*, 113 Cal.App.3d at p. 1010.) Section 1105 provides, "Upon a trial for murder, the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon the defendant, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable." In concluding that the jury should not be instructed on this point, the *Kelley* court placed considerable reliance on the analysis of this issue in *People v. Loggins* (1972) 23 Cal.App.3d 597 [100 Cal.Rptr. 528] (*Loggins*). (*Kelley, supra*, at pp. 1011–1012.)

In *Loggins*, the trial court instructed the jury in the language of former CALJIC No. 5.15, that "to establish the defense of justifiable homicide, the

---

[5] This section is now codified as Penal Code section 189.5, subdivision (a).

'burden is on the defendant to raise a reasonable doubt as to his guilt of the charge of murder.' " (*Loggins, supra,* 23 Cal.App.3d at p. 599.) The court's conclusion that the instruction should not be given was based on reasons unique to the crime of murder, and thus do not inform our analysis of the compassionate use defense.

The court explained section 1105 is "evoked only when the defendant is charged with murder, a crime which includes malice aforethought as an essential element. Malice may be inferred . . . even presumed . . . from the circumstances." (*Loggins, supra,* 23 Cal.App.3d at p. 601.) Once the prosecution has presented evidence that reasonably permits the inference that the defendant killed the victim without justification, and without mitigating circumstances, no further proof of malice is necessary to sustain a conviction for second degree murder. (*Ibid.*) Section 1105 thus supplies a rule of procedure that if the defendant wishes to raise the defense of mitigation or justification, he or she must "then come forward with enough evidence to raise a reasonable doubt of guilt in the mind of the fact trier." (23 Cal.App.3d at p. 601.) Because malice is an element of the crime of murder, however, this statutory mandate does not shift the burden of persuasion, but rather "beckons [the defendant] to come forward with his evidence." (*Ibid.*)

The *Loggins* court concluded that the language of section 1105 should not be injected into the jury's deliberations because it is not pertinent to their duties. (*Loggins, supra,* 23 Cal.App.3d at p. 604.) At the conclusion of the prosecution's case, if there is evidence of mitigation or justification presented by the prosecution, section 1105 has no application by its own terms. (23 Cal.App.3d at p. 603.) If the prosecution has presented no evidence on this subject, then the presumption underlying section 1105 is activated (i.e., malice is presumed in the killing), and the defendant is warned of his task to present evidence of mitigation or justification. (23 Cal.App.3d at p. 603.) The next step of the analysis occurs at the conclusion of the defense's case. (*Ibid.*) If, on the one hand, defendant has presented evidence of mitigation or justification, the presumption of malice underlying section 1105 disappears and the jury must determine the question of malice for themselves without regard to that presumption. (23 Cal.App.3d at p. 603.) The standard instruction on proof of guilt beyond a reasonable doubt supplies a sufficient criterion for the jury's guidance on that issue. (*Id.* at p. 604.) If, on the other hand, the defendant has failed to present evidence of mitigation or justification, then the issue of mitigation or justification is alien to the case and should be excluded. (*Id.* at p. 603.) Thus, instructing the jury on the concept underlying section 1105 provides no assistance to the jurors. (23 Cal.App.3d at p. 604.)

The *Loggins* court acknowledged that California law has "long barred instructions placing upon the defense any burden of persuasion as to the

elements of the crime, [citation]. Evidence of a defense other than insanity is sufficient if it raises no more than a reasonable doubt of guilt. [Citations.]" (*Loggins, supra,* 23 Cal.App.3d at p. 604.) The appellate court concluded, however, that "the instruction saddled the defense with no burden of persuasion. . . . The challenged instruction declared that self-defense need appear only to the point of raising a reasonable doubt of guilt—a legally accurate declaration." (*Id.* at p. 604.) As the above analysis demonstrates, section 1105 applies only to murder cases and arises out of the unique presumption of malice inherent in some killings.

There is no similar presumption of an element of the crimes of the possession of or cultivation of marijuana inherent in the establishment of the prosecution's case that a defendant possessed or cultivated marijuana. The statutory affirmative defense of the Compassionate Use Act thus shares only a passing similarity to section 1105. Moreover, as our Supreme Court has specifically concluded in the context of this affirmative defense, the burden is on the defendant to raise a reasonable doubt as to the facts underlying this defense. (*Mower, supra,* 28 Cal.4th at p. 481.)

Our conclusion that defendant misunderstands the nature of his burden of proof is further buttressed by *People v. Fuentes.* There, the trial court instructed the jury, " 'If the evidence establishes beyond a reasonable doubt that a defendant possessed such a needle or syringe, that defendant then has the burden of raising a reasonable doubt that he unlawfully acquired such object.' " (*People v. Fuentes, supra,* 224 Cal.App.3d at p. 1044.) The defendant argued this instruction "improperly shifted the burden of proof as to an element of the crime by requiring defendant to show that his acquisition of the hypodermic needle was lawful, rather than requiring the prosecutor to show that defendant's acquisition was unlawful." (*Ibid.*) The appellate court rejected this challenge and concluded that the instruction on this subject properly informed the jury of the defendant's burden in this regard. (*Id.* at pp. 1046–1047.) This was one of the three specific defenses the *Mower* court found most analogous to the compassionate use defense. (*Mower, supra,* 28 Cal.4th at p. 480.)

Here, consistent with the Supreme Court's holding in *Mower,* and the instruction in *Fuentes,* the trial judge instructed the jury according to the current version of CALJIC No. 12.24.1 (2003 rev.): "The possession or cultivation or transportation of marijuana is not unlawful when the acts of the defendant are authorized by law for compassionate use. Possession, cultivation or transportation of marijuana is lawful, one, where its medical use is deemed appropriate and has been recommended or approved, orally or in writing, by a physician. Two, the physician has determined that the person's health would benefit from the use of marijuana in the treatment of any illness

for which marijuana provides relief. And, three, the marijuana possessed, cultivated or transported was for the personal medical use of defendant or a person whom—for whom he was a primary caregiver. And, four, the quantity of marijuana possessed or cultivated, and the form in which it was possessed were reasonably related to the patient['s] or defendant's then current medical needs. [¶] A primary caregiver is an individual designated by the person exempted who has consistently assumed responsibility for the housing, health, or safety of that person. To establish the defense of compassionate use, the burden is upon the defendant to raise a reasonable doubt as to guilt of the unlawful possession, cultivation or transportation of marijuana."

This instruction is a far cry from the instructions disapproved in *People v. Agnew* (1940) 16 Cal.2d 655 [107 P.2d 601]. There, the defendant was prosecuted for false imprisonment of a man named Prouty. (*Id.* at p. 658.) The defendant's defense was that he lawfully arrested Prouty for perjury. (*Id.* at p. 658.) The trial court instructed the jury, " 'the burden is on the defendant to prove that Prouty committed perjury' " and also that " 'unless you find from the evidence that . . . Prouty had actually committed perjury, a felony, or that a felony had been committed by someone and the defendant had reasonable cause to believe that . . . Prouty had committed it, the arrest of . . . Prouty, if any was made by defendant, was not lawful.' " (*Id.* at p. 661.) The appellate court concluded these instructions impermissibly implied that the burden was upon the defendant to prove the lawfulness of the imprisonment by a preponderance of the evidence. (*Id.* at pp. 665–666.) As a result, the court concluded the second instruction should not have been given, and that the first instruction should only be given with a qualifying instruction informing the jury that "the burden thus placed on defendant could be met by evidence which produced in their minds a reasonable doubt as to whether . . . Prouty had in fact committed perjury." (*Id.* at p. 666.) That is precisely what CALJIC No. 12.24.1 provided here.

Defendant next argues this instruction "suggest[s] to lay persons that the defendant has the 'burden' of proving his case 'beyond a reasonable doubt' when raising a defense under the [Compassionate Use] Act." It does no such thing. This instruction accurately states the law as set forth by the Supreme Court in *Mower*. The instruction identifies the facts required to establish the compassionate use defense and states that the defendant has the burden of raising a reasonable doubt concerning the existence of the facts that underlie this defense.

Defendant further argues the phrase "raise a reasonable doubt" has a high technical meaning that will not be understood by the jury. Defendant contends this instruction "likely misled the jury to believe that [defendant] had the burden to prove his innocence and without an explanatory instruction

the jury could not understand the instruction." "Where, as here, the contention is that the instructions given needed amplication [*sic*] or explanation, the rule is that, in the absence of a request therefor, error cannot be predicated on the trial court's failure to instruct further on its own motion [citation] except where the terms used have a technical meaning peculiar to the law." (*People v. Earnest* (1975) 53 Cal.App.3d 734, 744 [126 Cal.Rptr. 107].) Conversely, "[w]hen . . . a phrase 'is commonly understood by those familiar with the English language and is not used in a technical sense peculiar to the law, the court is not required to give an instruction as to its meaning in the absence of a request.' " (*People v. Rowland* (1992) 4 Cal.4th 238, 270–271 [14 Cal.Rptr.2d 377, 841 P.2d 897].) Contrary to defendant's argument, there is no highly technical meaning in the phrase "raise a reasonable doubt" beyond the terms "reasonable doubt." Those terms were defined to the jury pursuant to the time-tested CALJIC No. 2.90: "Reasonable doubt is defined as follows: It is not a mere possible doubt . . . because everything relating to human affairs is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction in the truth of the charge." Applied here, the instructions properly informed the jurors that they could not convict defendant of possession or cultivation of marijuana if they concluded that they could not say they felt an abiding conviction defendant unlawfully possessed or cultivated it because of the Compassionate Use Act defense. It is identical in this sense to the instruction approved by the court in *Fuentes, supra,* 224 Cal.App.3d at pages 1044 and 1046 to 1047.

II

*The Trial Court Properly Advised the Jury on the Meaning
of a Primary Caregiver.*

Defendant argues the trial court erred in its instructions on the meaning of the term "primary caregiver" under section 11362.5, subdivision (e). We disagree.

Section 11362.5, subdivision (d) provides that the compassionate use defense applies both to patients and their "primary caregivers." Primary caregiver is further defined in section 11362.5, subdivision (e) as "the individual designated by the person exempted under this section who has consistently assumed responsibility for the housing, health, or safety of that person." Consistent with this statutory definition, the trial court instructed the jurors that a "primary caregiver is an individual designated by the person

exempted who has consistently assumed the responsibility for the housing, health or safety of that person."[6]

Defendant first argues that the instruction for primary caregiver has a "technical meaning peculiar to the law." We reject this claim. The language used in the court's instructions parallels the statute and is comprised of words commonly understood by those familiar with the English language. Those words are not used in a technical sense peculiar to the law.

Defendant next argues that a "primary caregiver" is a person who "consistently grows and supplies physician approved marijuana for a medical marijuana patient to serve the health needs of that patient," citing *People ex rel. Lungren v. Peron* (1997) 59 Cal.App.4th 1383, 1399 [70 Cal.Rptr.2d 20] (*Peron*). Defendant quotes from that opinion out of context. The full quote from the opinion is as follows: "As we have noted, the statute defines a primary caregiver as one 'who has *consistently* assumed responsibility for the housing, health, or safety of [the patient].' (§ 11362.5(e), italics added.) Assuming responsibility for housing, health, or safety does not preclude the caregiver from charging the patient for those services. A primary caregiver who consistently grows and supplies physician-approved or -prescribed medicinal marijuana for a section 11362.5 patient is serving a health need of the patient, and may seek reimbursement for such services." (*Peron*, at pp. 1399–1400, italics omitted.) This language applies to primary caregivers who seek reimbursement for their services. It does not create a class of primary caregivers that does not already exist.

Although he did not request an instruction during trial, defendant argues he was entitled to an instruction that a caregiver is entitled to reimbursement for both expenses incurred and services rendered on behalf of his patients. As we have already stated, the instruction the court gave the jury on the definition of a primary caregiver correctly defined the meaning of that term as used by the statute and was in commonsense English. Thus, to the extent defendant sought further amplification or clarification of that definition, it was incumbent on him to request that instruction. (*People v. Rowland, supra,* 4 Cal.4th at p. 271.) Having failed to do so, he forfeited the right to raise it here for the first time on appeal. (*Ibid.*)

---

[6] During the oral portion of the instructions, the court said "housing, health *and* safety of that person." The defendant does not raise as an issue the court's use of the conjunctive rather than the disjunctive, nor could he. " 'It is generally presumed that the jury was guided by the written instructions.' " (*People v. Rodriguez* (2000) 77 Cal.App.4th 1101, 1112–1113 [92 Cal.Rptr.2d 236].) "Consequently, as long as the court provides accurate written instructions to the jury to use during deliberations, no prejudicial error occurs from deviations in the oral instructions." (*Ibid.*) Here, accurate written instructions were provided to the jury and are the ones we presume the jury used.

## III

*The Court Properly Instructed the Jury to Consider Whether the Marijuana Was Reasonably Related to the Patient's or Defendant's Then Medical Needs*

Defendant argues that *Mower* implicitly overruled the holding in *People v. Trippet* (1997) 56 Cal.App.4th 1532 [66 Cal.Rptr.2d 559] (*Trippet*) that the jury must determine whether the amount of marijuana possessed by a defendant is "reasonably related to the patient's current medical needs" when assessing the compassionate use defense. We disagree.

■ In *Trippet*, the appellate court examined whether the evidence could provide defendant with a defense under the Compassionate Use Act. (*Trippet, supra*, 56 Cal.App.4th at pp. 1547–1548.) The court concluded, "However, we are not remotely suggesting that, even with a physician's 'recommendation or approval,' a patient may possess an unlimited quantity of marijuana. The ballot arguments of the proponents, some of which are quoted above, are simply inconsistent with the proposition that either the patient or the primary caregiver may accumulate indefinite quantities of the drug. The statute certainly does not mean, for example, that a person who claims an occasional problem with arthritis pain may stockpile 100 pounds of marijuana just in case it suddenly gets cold. The rule should be that the quantity possessed by the patient or the primary caregiver, and the form and manner in which it is possessed, should be reasonably related to the patient's current medical needs. What precisely are the 'patient's current medical needs' must, of course, remain a factual question to be determined by the trier of fact." (*Id.* at p. 1549.)

Defendant points to the following discussion in the harmless error analysis of *Mower*: "Defendant unquestionably was a patient—an 'extremely' ill patient who suffered from 'diabetes and all its complications.' Furthermore, defendant unquestionably possessed and cultivated marijuana on the recommendation of a physician, who advised him to use the substance. What could be questioned, however, was whether defendant possessed and cultivated the marijuana in question entirely for *his own personal medical purposes*. Had the jury properly been instructed that defendant was required merely to raise a reasonable doubt about his purposes instead of proving such purposes by a preponderance of the evidence, it might have found him not guilty. We come to this conclusion because the jury might have found that defendant raised a reasonable doubt—to wit, whether the 31 marijuana plants would yield a harvest of only about five pounds for a year's supply, in accordance with defendant's testimony and that of his expert witness. The evidence showed that the yield of the plants was uncertain, based as it was on various

agricultural and other assessments and projections. In light of such uncertainty, the jury might have entertained a reasonable doubt in defendant's favor." (*Mower, supra,* 28 Cal.4th at pp. 484–485.)

Defendant contends that the italicized language in *Mower*—"his own personal medical purposes"—overruled the language of *Trippet* that the jury should consider "the quantity possessed by the patient or the primary caregiver, and the form and manner in which it is possessed, should be reasonably related to the patient's current medical needs." There is nothing inconsistent between these two phrases. The definition provided by *Trippet* simply provides further illumination on the statutory language contained in section 11362.5, subdivision (d). Nothing in *Mower* is inconsistent with that language.

Further, "[c]ases do not stand for propositions that were never considered by the court." (*Mares v. Baughman* (2001) 92 Cal.App.4th 672, 679 [112 Cal.Rptr.2d 264].) *Mower* did not address the question answered by *Trippet* as to what "personal medical purposes" means under the Compassionate Use Act. While the *Mower* opinion cites *Trippet,* the *Mower* opinion in no way denigrates the authority of *Trippet* on the subject of this phrase. (*Mower, supra,* 28 Cal.4th at pp. 474, 483.) The questions addressed in *Mower* were whether it was the prosecution or the defendant who had the burden of proof on the compassionate use defense, and what that burden of proof entailed. (*Id.* at p. 464.) This has nothing to do with the element of the defense explained by *Trippet.* We conclude *Mower* did not implicitly overrule *Trippet.*

IV

*Defendant Is Not Entitled to a New Trial on the Defenses Contained in the Medical Marijuana Program*

Defendant argues that the Medical Marijuana Program law, codified at sections 11362.7 through 11362.83, provides him with new defenses to the crimes for which he was convicted. While we conclude the law should be applied retroactively, it does not assist defendant.

The People argue the law is not retroactive. They are wrong. In examining the retroactivity of the Compassionate Use Act, the court in *Trippet* agreed with the People's concession "that absent contrary indicia, 'the Legislature is presumed to have extended to defendants whose appeals are pending the benefits of intervening statutory amendments which decriminalize formerly illicit conduct [citation], or reduce the punishment for acts which remain unlawful. [Citations.] No different rule applies to an affirmative defense to the crime for which a defendant was convicted, which defense was

enacted during the pendency of her appeal.' Proposition 215 [the Compassionate Use Act] contains no savings clause and so, as the Attorney General further concedes, 'it may operate retrospectively to defend against criminal liability, in whole or part, for some who are appealing convictions for possessing, cultivating and using marijuana.' [Citation.]" (*Trippet, supra,* 56 Cal.App.4th at pp. 1544–1545.) To the extent that the Medical Marijuana Program sets forth new affirmative defenses, expands the defense identified by the Compassionate Use Act, and contains no savings clause, that law must be retroactively applied.

■ That, however, does not end the inquiry. Retroactive application of a defense is only required "if its terms and the applicable facts permit, a defense to" defendant. (*Trippet, supra,* 56 Cal.App.4th at p. 1545.)

Here, defendant cannot establish that the defenses he proffers are available to him. Defendant points to sections 11362.765, subdivision (c), 11362.765, subdivision (b)(3), and 11362.775.

Section 11362.765 provides as follows: "(a) Subject to the requirements of this article, the individuals specified in subdivision (b) shall not be subject, on that sole basis, to criminal liability under Section 11357, 11358, 11359, 11360, 11366, 11366.5, or 11570. . . . [¶] . . . [¶] [(b)](3) Any individual who provides assistance to a qualified patient or a person with an identification card, or his or her designated primary caregiver, in administering medical marijuana to the qualified patient or person or acquiring the skills necessary to cultivate or administer marijuana for medical purposes to the qualified patient or person. [¶] (c) A primary caregiver who receives compensation for actual expenses, including reasonable compensation incurred for services provided to an eligible qualified patient or person with an identification card to enable that person to use marijuana under this article, or for payment for out-of-pocket expenses incurred in providing those services, or both, shall not, on the sole basis of that fact, be subject to prosecution or punishment under Section 11359 or 11360."

Further, section 11362.775 provides: "Qualified patients, persons with valid identification cards, and the designated primary caregivers of qualified patients and persons with identification cards, who associate within the State of California in order collectively or cooperatively to cultivate marijuana for medical purposes, shall not solely on the basis of that fact be subject to state criminal sanctions under Section 11357, 11358, 11359, 11360, 11366, 11366.5, or 11570."

■ A "qualified patient" is one who is entitled to the protections of the Compassionate Use Act, but who does not have an identification card issued

pursuant to the Medical Marijuana Program Act. (§ 11362.7, subd. (f).) A "primary caregiver" is defined as "the individual, designated by a qualified patient . . . , who has consistently assumed responsibility for the housing, health, or safety of that patient or person . . . ."[7] (§ 11362.7, subd. (d).) While defendant presented evidence he was both a qualified patient and a primary caregiver, he is not entitled to a new trial to assess the impact of the defenses under sections 11362.765, subdivision (c) or 11362.775 because the jury, properly instructed on the subject of the compassionate use defense, concluded he did not raise even a reasonable doubt that he and his proffered patients (his wife, stepson, and ex-sister-in-law) were qualified patients or that he was a primary caregiver. Thus, these protections cannot apply to him.

Further, the potential defense under section 11362.765, subdivision (b)(3), is not applicable because defendant was not providing assistance to a qualified patient or his or her primary caregiver in administering marijuana nor was he acquiring skills to cultivate marijuana. "Administer" under the Health and Safety Code means "the direct application of a controlled substance, whether by injection, inhalation, ingestion, or any other means, to the body of a patient for his immediate needs or to the body of a research subject by any of the following: [¶] (a) A practitioner or, in his presence, by his authorized agent. [¶] (b) The patient or research subject at the direction and in the presence of the practitioner." (§ 11002) Defendant was growing and possessing marijuana, not assisting in administering it to anyone. Further, there was no evidence adduced that he was acquiring the skills to cultivate marijuana. By no stretch of the imagination could these defenses apply here.

Defendant also argues that section 11362.77 of the Medical Marijuana Program sets forth *minimum* amounts of marijuana a qualified patient may possess for compassionate use. Aside from the fact that the language of this section states *maximum* amounts of marijuana that may be possessed and setting aside whether the Legislature has the power to enact this limitation, each of the subdivisions of these statutes is limited in application to "qualified patient[s]" or "primary caregiver[s]." Defendant, however, cannot avoid the fact that the jury rejected his defense that he was a primary caregiver and/or qualified patient. Thus, this argument fails before it begins.

---

[7] This subdivision goes on to provide three examples of persons who would qualify as primary caregivers under this definition, including the owner or operator of certain clinics and care facilities; an individual who has been designated as a primary caregiver by more than one qualified patient, all of whom live in the same city or county as he does; and an individual who has been designated by a single qualified patient who resides outside of the city or county from the individual.

## V

*Defendant Failed to Satisfy His Statutory Burden to Bring
the Motion to Suppress Prior to Trial*

Defendant argues "the court erred when it denied [defendant's] motion to suppress prior to trial despite that a prior opportunity to bring such a motion to suppress did not exist and the defendant was not aware of the grounds for the motion until that time." We reject this argument.

The time limits for bringing a motion to suppress for a felony offense are found in Penal Code section 1538.5, subdivisions (h) and (i). Those sections provide, "(h) If, prior to the trial of a felony or misdemeanor, opportunity for this motion did not exist or the defendant was not aware of the grounds for the motion, the defendant shall have the right to make this motion during the course of trial. [¶] (i) If the property or evidence obtained relates to a felony offense initiated by complaint and the defendant was held to answer at the preliminary hearing, or if the property or evidence relates to a felony offense initiated by indictment, the defendant shall have the right to renew or make the motion at a special hearing relating to the validity of the search or seizure which shall be heard prior to trial and at least 10 court days after notice to the people, unless the people are willing to waive a portion of this time." (Pen. Code, § 1538.5, subds. (h), (i).)

In *People v. Martinez* (1975) 14 Cal.3d 533 [121 Cal.Rptr. 611, 535 P.2d 739], the defendant made a motion to suppress during trial based on testimony elicited from the searching officer at trial. The trial court rejected that motion and the Supreme Court affirmed. The court concluded that counsel was not limited to the testimony provided during the preliminary hearing. He could have learned the grounds for the pretrial motion by simply interviewing his client. (*Id.* at pp. 537–538.) As a result, the fact that counsel did not know of these facts did not fit the requirements of Penal Code section 1538.5, subdivision (h) that the defendant was not aware of the grounds for the motion. (*Martinez, supra,* at pp. 537–538.) The *Martinez* court thus recognized a "due diligence" requirement for a belated motion to suppress under Penal Code section 1538.5, subdivision (h).

In *People v. Burke* (1974) 38 Cal.App.3d 708 [113 Cal.Rptr. 553], the defendant made a motion to suppress evidence after the jury was selected, but prior to opening statements. His counsel informed the court that there had been no opportunity to make the motion earlier because of delay in discovering the relevant facts. (*Id.* at p. 713.) The trial court denied the motion because there had been ample time to make the motion prior to trial, noting that counsel had been representing the defendant for over two months. (*Ibid.*)

In affirming this determination, the appellate court noted, "The procedural scheme established by Penal Code section 1538.5 displays a strong legislative preference for litigating prior to trial the legality of searches and seizures. [Citation.] Subdivision (h) of [Penal Code] section 1538.5 allows a motion to suppress to be heard during a trial only if 'prior to the trial . . . opportunity for this motion did not exist or the defendant was not aware of the grounds for the motion, . . .' [Citation.] No persuasive justification for the delay was presented. The court did not err in rejecting appellant's motion." (*Ibid.*)

Here, on the first day of trial, defendant brought a motion in limine to exclude evidence discovered during the November 2001 search based on the argument that the law enforcement officers were impermissibly on the curtilage of defendant's residence when they executed the probation search on the mobile home which was Ferrell's residence. Defendant's motion conclusively alleged "the defense was previously unaware of the grounds for bringing this motion, and no opportunity existed prior to trial to bring the motion, given present counsel's late entry into the case."

The trial court rejected this motion, concluding, "Based upon the Motion that was filed, the Court cannot find that this evidence that is not previously known to the Defense, and it does not appear to accommodate [section] 1538.5(h) of the Penal Code. I understand that the particular trial counsel may have come in late, but the evidence itself appears to have been known to the Defense or should have been known. The facts are not new."

Defendant's counsel had been employed on the case for two months prior to trial. The facts of the two searches, as they were the central points of this case, must have been within the knowledge of defendant. Because defendant presented no persuasive justification for the delay in bringing the motion, the trial court's denial was not error. Despite defendant's argument to the contrary, we find no significance that the jury had not yet been selected in this case at the point these motions were made. Further, we agree with the People that allowing the knowledge of the defense to be assessed based on the knowledge of new counsel alone will encourage gamesmanship in the use of substituted counsel and the delay of trials.

VI*

*The Trial Court Did Not Err in Sentencing Defendant to the Upper Term*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 807.

## DISPOSITION

The judgment is affirmed.

Hull, Acting P. J., and Butz, J., concurred.